JOSEPH W. REYNOLDS *vs.* LESSER FRANKLIN.

### July 17, 1889.

**Contract of Exchange of Property.**—The testimony in this case, in which there was little or no conflict, examined and considered. *Held*, that the transaction between the parties amounted to a trade or exchange of personal property owned by the plaintiff for several tracts of land owned by the defendant.

**Same—Refusal to Perform not Justified by Incumbrance.**—At the time of the trade the latter deeded a part of the real estate, and entered into an unconditional agreement in writing to convey the remainder at the expiration of 60 days. Thereafter he refused to convey, alleging that, in order to obtain actual possession of the personal property traded to him by plaintiff, he was obliged to execute and deliver a bond to a third party, who had, or claimed to have, a lien thereon by virtue of a chattel mortgage. *Held*, under the circumstances appearing in this case, that such fact would not justify the defendant in his refusal to comply with the terms of his agreement.

**Same—Remedy for Refusal.**—Upon defendant's refusal, the plaintiff might have brought an action to enforce specific performance, or, in an action at law, he could recover the value of the unconveyed lands, or, upon rescinding the contract, he would be entitled to recover the value of his personal property.

Appeal by defendant from an order of the district court for Hennepin county, *Baxter,* J., presiding, (acting for a judge of the fourth district,) refusing a new trial after verdict of $1,940.67 for plaintiff.

*Forrest & Van Cleve* and *Lane & Johnson,* for appellant.

*Russell, Calhoun & Reed,* for respondent.

COLLINS, J. The plaintiff was the owner of a stock of household goods and furniture, which he valued at about $3,600. There was filed against this property, and apparently a lien upon it, a chattel mortgage given to secure the note of a former owner for $550. The plaintiff claimed, however, that this note had been paid. The defendant owned several tracts of land, aggregating in value, in his opinion, much more than plaintiff's goods and furniture. Negotiations between the parties led to an agreement whereby plaintiff was

to select a number of pieces of defendant's land, which were to be properly conveyed to him in exchange for the goods and furniture before mentioned, not then in plaintiff's actual possession, but in the house in which they had been used by the former owner, some 10 miles distant from defendant's place of business, where the trade was discussed and in part made. The parties then visited the house, the defendant expressed his satisfaction with plaintiff's property, and gave his own servants some directions about packing and moving it. On returning to his place of business, he executed and delivered to plaintiff a deed for some of the tracts of land selected by the latter, and an unconditional agreement to convey the balance so selected, within 60 days from date, May 5, 1885, by warranty deed, free from all incumbrances, except as therein specially described; whereupon the plaintiff delivered to defendant a bill of sale of the goods and furniture, which he had received when he bought, and a so-called assignment thereof to defendant. The bill of sale was in the common form, and conveyed the property to *plaintiff*, subject to the chattel mortgage before referred to. The assignment, in addition to transferring plaintiff's rights to the goods and furniture, contained a warranty of title, especially as to the mortgage, and a clause, "otherwise the sale is made without a warranty, express or implied, as to value, quality, or condition." The defendant thereafter refused to convey the parcels of land, and plaintiff brought this action to recover a certain sum, which in his complaint he alleges he paid defendant for the lands described in defendant's agreement to convey, before mentioned, which is made a part of the complaint. The plaintiff nowhere intimates in his pleading that his payment was in chattels, but the answer discloses the facts as herein stated, and about which, aside from some conclusions, the witnesses did not greatly differ when testifying upon the trial. The defendant further stated in his answer that, in order to obtain actual possession of the property, he was obliged to and did execute and deliver to the person holding the chattel mortgage thereon, a bond conditioned that defendant would pay to said mortgagee such sum as might be found due him upon his mortgage, which bond he so executed and delivered with the knowledge and consent of the plaintiff, and upon his (plaintiff's) promise to pro-

tect and indemnify him from any loss thereon, and that the defendant remains and is liable to said mortgagee upon the bond.

We are of the opinion that the evidence shows the transaction to have been a "trade," the plaintiff bartering his chattels for the defendant's real estate, part of which has been conveyed to him. It is undoubtedly true that there was more or less talk over values, (a trade could not well be made without it,) and the customary puffing and praising. The plaintiff admits, to use his words, that "the sum and substance of" defendant's final offer, to which he responded, "All right," was: "I will put you in that piece in Stevens county, will put you in two lots up at Plymouth, will put you in one lot at Forest Park, will put you in 160 acres of land in Walsh county, and then will put you in this lot out here in Silver Lake." Nor do we have to rely exclusively upon verbal testimony as to the character of these dealings. The defendant's agreement was executed "for and in consideration of the full value" of the pieces of land which he therein contracted to convey, while the plaintiff, in his assignment of the bill of sale, in which was minutely described the household goods and furniture, distinctly stipulated, in that part before quoted, that there was no warranty of value, quality, or condition, express or implied.

The measure of damages contended for by plaintiff, as is evident from his complaint and the reply, (in which reply he denied the allegations of the answer,) and upon which the jury based a verdict for the sum demanded in said complaint, was therefore erroneous. The plaintiff, under the facts as they appeared upon the trial, was not entitled to recover as if he had paid money for defendant's lands. He might, upon the latter's refusal to convey, commence an action to enforce specific performance, and in such action recover the land itself; or he might recover the value of the several parcels of land which the defendant promised to convey, and did not, (*Donlon* v. *Evans*, 40 Minn. 501, (42 N. W. Rep. 472;) and possibly, as was intimated in *Skaaraas* v. *Finnegan*, 31 Minn. 48, (16 N. W. Rep. 456,) he might recover substantial damages, should there be such, for the loss of his bargain. When one party to a contract refuses to fulfil upon his part, the other may rescind, if he chooses, and recover in *assumpsit* the money he has paid, or the value of what he has done

for the other party for which he has received no benefit. 3 Am. & Eng. Cyclop. Law, 906, and cases cited. To the same effect is *Bennett* v. *Phelps*, 12 Minn. 216, (326.) In the case at bar the plaintiff traded chattels of a certain aggregate value for several distinct tracts of land. Upon defendant's refusal to convey *any* of these separate parcels, and plaintiff's rescission of the contract, the latter could have recovered in *assumpsit* the actual value of the personal property, with interest from the day of sale. But that is not the situation here. The defendant has conveyed a part of the real estate, the plaintiff has accepted the conveyance, has retained the land therein described, and consequently has not rescinded the contract. We see no way for the plaintiff to establish the value of that part of his property which was traded for the tracts of land described in defendant's written agreement, and which he refuses to convey, from that portion which may be said to have been exchanged for the lands conveyed by deed to plaintiff and still retained by him. And upon the pleadings as they now stand, and with the same testimony, he cannot recover at all. If allowed to amend, (and this is within the discretion of the trial court,) plaintiff might recover in this form of action, and under proper allegations, the value of the pieces of land still held by the defendant.

In view of another trial and in conclusion, we will say that the defendant has accepted the plaintiff's warranty of title, and upon this he must rely. From the allegations of his answer relative to the necessity of executing and delivering a bond before he could obtain actual possession of the personalty, and from the proof offered in support of these allegations, it does not appear that he is in danger of substantial injury. It is not apparent that any liability will arise or loss result from the delivery of the bond. Such liability or loss cannot be anticipated and litigated in this action.

Order reversed.