111    437
134    391

### T. J. CONNORS v. E. J. CHINGREN, Defendant, AND GEORGE E. HUGHES, Defendant and Appellant.

**Fraudulent Real Estate Exchange:** SUFFICIENCY OF EVIDENCE. Defendant H. deeded real estate of the value of four hundred dollars to the wife of defendant C., the deed reciting a consideration of two thousand dollars. The actual consideration, if any was given, was her note for one thousand dollars. The land was marshy and unfit for cultivation. Afterwards C. traded the land to plaintiff for a stock of goods at a valuation of two thousand dollars, after having shown him a different tract of land, which was worth such amount, which he represented as the land he was trading. H. took a chattel mortgage on the stock for one thousand dollars, and released his claim on the land, and afterwards purchased goods for such stock, and moved the stock to another town, and thereafter sold it under his mortgage. There was conflicting testimony of statements made by C. concerning the interest of H. in the property. *Held*, sufficient to sustain judgment against both defendants in an action for damages for fraud in such transaction.

**Evidence:** ADMISSIBILITY: *Against one of two defendants.* Where two defendants are sued for complicity in a fraudulent real estate trade, evidence of what one of the defendants said and did previous to the trade is admissible against him.

SAME. Where, in an action for fraud in a real estate trade, defendant introduces evidence that the stock of goods received in exchange was greatly overvalued, plaintiff may show that defendant's agent sold the goods at very low prices, as showing a desire to speedily dispose of the goods, and other matters in issue.

SAME. Where, in an action against two defendants for fraud in a real estate trade, one of the defendants claims to have had no interest in the trade, except as mortgagee, a deed of the property from him to the wife of the other, and a mortgage back, are admissible.

SAME: *Impeachment.* Where two defendants are sued for complicity in a fraudulent real estate trade, and one of the defendants testifies that he did not state to a certain person that the other defendant owned the property received in the trade, testimony that he did make such statement is admissible for impeachment.

Objections. Error in the admission of evidence of statements made by one defendant in an action charging complicity of two defendants in a fraudulent real estate trade will not be considered when the record does not show an objection on grounds applicable thereto.

**Instructions:** MUST NOT ASSUME DISPUTED FACTS. Where, in an action charging a mortgagee of a stock of goods with complicity in a fraud by which the mortgagor obtained the goods, the evidence showed that the mortgagee purchased additions to the stock, and had the stock moved to another town, and the court had instructed that, if the past transactions were in good faith, the mortgagee had the right to remove the goods, it was not error to refuse to instruct that, as mortgagee, he had the right to order new goods and to remove the stock, as such instruction assumed the validity of former transactions between the mortgagor and mortgagee, the good faith of which was in dispute.

Equivalents. It is not error to refuse to instruct that fraud is not presumed, and that, if the evidence is consistent with fair dealing, the jury should so find, where an instruction is given that, where the evidence is as consistent with an honest purpose as a fraudulent one, the verdict should be for the person charged therewith.

Impeachment: *Must be requested.* Where there was no instruction asked limiting the effect of impeaching evidence, the failure to give such instruction was not error.

Same: *Conspiracy.* Where two defendants are sued for complicity in a fraudulent real estate trade, an instruction that, if a conspiracy to defraud is established, then the declaration of either party, made in carrying out the common purpose, is binding on both, is a sufficient limitation of such evidence, in the absence of a request for a more specific instruction.

Same: *Measure of damages.* Where the pleading in an action for damages for a fraudulent real estate trade shows that the parties traded on the basis that the land was of a certain value, an instruction that the measure of damages was the difference between the value of the land received and the value as represented was not erroneous, in the absence of a request for a more specific instruction, for failure to recognize the actual value as fixed by the parties to the trade.

**Verdict:** PASSION AND PREJUDICE. Where the amount of the recovery is not limited by the instructions, it cannot be said, from the size of the verdict alone, that it is the result of passion or prejudice.

EXCESSIVE VERDICT: *Reduction by court.* Where, in an action for damages for fraud in a real estate trade, certain property was taken for two thousand dollars, when it was only worth four hundred dollars, it was not error for the court to reduce an excessive verdict for plaintiff, and enter judgment for one thousand six hundred dollars damages and ninety dollars accrued interest.

*Appeal from Pocahontas District Court.*—HON. LOT THOMAS, Judge.

THURSDAY, MAY 17, 1900.

ACTION at law to recover damages for an alleged conspiracy to defraud. There was a trial to a jury, resulting in a verdict for plaintiff. Defendant Hughes appeals.— *Affirmed.*

*Wright & Nugent* and *Stevenson & Lavender* for appellant.

*W. C. Ralston* for defendant Chingren.

*J. A. O. Yeoman* and *Botsford, Healy & Healy* for appellee.

DEEMER, J.—Defendant Chingren was a real-estate agent residing in Fonda, and using an office rented from his co-defendant, Hughes. Hughes owned some land in section 8, in Cedar township, Pocahontas county, known as "Sunk Grove." On the eighth day of August, Hughes conveyed this land, by special warranty deed, to Chingren's wife, the expressed consideration being two thousand dollars. The real purchase price, if there was any, was four promissory notes executed by Mrs. Chingren for the sum of one thousand dollars. The character and value of the land are in dispute; but the jury was authorized to find that it was marshy, and entirely unfit for cultivation; that it could not be drained, and was not worth to exceed four hundred dollars. Learning that plaintiff had a stock of goods

and a store building at Barnum for sale or trade, Chingren arranged by telephone for plaintiff and a real-estate agent named Wickens, who had plaintiff's property for sale or trade, to go to Fonda to see the land. Pursuant to arrangement, the three parties named went to see the land. Plaintiff contends that, instead of being shown the marshy land theretofore owned by Hughes, he was pointed out another and different piece, that was high and dry, and without swamp or marsh, save about eight acres in the southwest corner. Returning from the land, the parties then went to view plaintiff's property at Barnum. Chingren represented to plaintiff that Hughes held a mortgage for one thousand dollars on the land, and that, before a trade could be consummated, he would have to see whether Hughes would consent to a change of securities. It was therefore orally agreed between the parties that, if Hughes would consent to this exchange, they would trade on the following terms: The land was to be taken by plaintiff at two thousand dollars, and he was to receive for his stock of goods one thousand two hundred dollars, and for his lot and store building one thousand dollars. The difference of two hundred dollars was to be represented by a note secured by a second mortgage on the store building. Chingren was to go back to Fonda and get Hughes to examine plaintiff's property. Pursuant to arrangements, Hughes went to Barnum and looked over plaintiff's property, and consented to a change of securities. Thereafter Hughes surrendered to Mrs. Chingren the one thousand dollars in notes secured from her, and accepted a new note for the same amount, which was executed by Mrs. Chingren to Hughes, secured by first mortgage on the stock of goods and the store building and lot. Mrs. Chingren conveyed to plaintiff the land deeded her by Hughes; and plaintiff, by bill of sale, conveyed his stock of goods, and by warranty deed his store building and lot, to Mrs. Chingren. Mrs. Chingren also executed and delivered to plaintiff a note for two hundred dollars, secured

by second mortgage on the store building and lot. Chingren took possession of the stock, and at his request Hughes sent a man to take charge of the store,—as he says, for a few days, during his (Chingren's) absence. This man (Burdick, by name) sold some of the stock, and the net amount of the sales was credited on Hughes' note. On Burdick's return, Chingren again took possession of the stock, and sold goods for about two months, when Hughes took possession, and had it shipped to Fonda in his own name. After it arrived at Fonda, Hughes sold at retail until his notes from Mrs. Chingren matured, and he then foreclosed his mortgage by selling the remainder, and he claims that the total amount received has not been sufficient to satisfy the note. About two months after the exchange, plaintiff again visited the land he supposed he was getting in exchange, and then for the first time found that the wrong piece had been shown him, and that he had been defrauded. Chingren was then indicted for securing property by false pretenses, convicted, and sentenced to the penitentiary. He appealed to this court, and the judgment was affirmed. 105 Iowa, 169. Hughes was a surety on the supersedeas bond in that case. Plaintiff thereupon commenced this action to recover from Hughes and Chingren the damages sustained by him, charging that defendants conspired together to cheat and defraud; that the conveyance from Hughes to Chingren was without consideration, and that the one thousand-dollar mortgage was placed thereon by Mrs. Chingren for the fraudulent purpose of giving a fictitious value to the land; that, acting in concert with Hughes, Chingren proposed trade to plaintiff, and took him out to see the land, and then and there, with purpose to defraud, pointed out the wrong tract; that the land pointed out was worth from two thousand to two thousand four hundred dollars; and that the land actually conveyed was worth but four hundred dollars; that plaintiff believed he was trading for the land pointed out, and made the exchange in that belief; that everything said and done by Chingren was at the

instigation of Hughes, and in furtherance of the conspiracy; that Hughes took a chattel mortgage for his share of the profits from the conspiracy; and that he (Hughes) divided the fruits thereof between himself and Chingren. The allegations of fraud and conspiracy are denied by Hughes. On these issues the case was tried to a jury, resulting in a verdict for plaintiff in the sum of two thousand six hundred and sixty-six dollars and seven cents. Motion for a new trial being filed, the court ordered that the same be sustained unless plaintiff would remit all of the verdict in excess of one thousand seven hundred and ninety dollars. The remittitur was filed, and the motion for a new trial was overruled. Chingren has not appeared, and the record so clearly shows fraud on his part that we may assume, for the purposes of the case, that fraud in the trade has been established. The real issue in the case was, what was defendant Hughes' connection with the fraud? Was he a conspirator with Chingren? Shortly after the exchange of properties, Hughes sent a card to a wholesale house, asking them to ship a barrel of granulated sugar to Chingren at Barnum, and to forward the bill to him. Shortly thereafter a traveling man called on Chingren, to sell him goods, and was referred to Hughes. Hughes said, "Yes; I will guaranty the amount." Being informed that this was not sufficient, Hughes then said, "Well, ship it to me, for Chingren." The goods sold were shipped to Hughes, marked "A. E. C." To meet this evidence, defendant asked the court to instruct, in effect, that Hughes, as mortgagee, had the legal right to order new goods to go into the stock, and to guaranty payment thereof, and that he had the legal right to remove the stock from Barnum to Fonda. This instruction was refused. The ruling of the court was right, for the instruction assumed the validity of all prior transactions between Chingren and Hughes. These matters were in dispute, and the court would have committed error, had it given an instruction assuming the validity of matters in dis-

pute. In one of the instructions given, the court practically covered the matter by saying that, if previous transactions were in good faith, Hughes had the right to remove the stock to Fonda.

II. Defendant Hughes also asked an instruction to the effect that fraud and conspiracy are never presumed, and that, if the evidence offered was consistent with honesty and fair dealing, the jury should so find. The instruction announced a correct rule of law, but we think the same thought was expressed in the eighth, tenth, eleventh, and thirteenth instructions. The latter part of the thirteenth reads as follows: "And if, upon the whole evidence in the case, the conduct of Hughes, as proven by the testimony, is as consistent with an honest purpose as with a fraudulent one, you should consider that no fraudulent purpose on his part has been proven; and, if not proven, then you should return a verdict in his favor." Surely there was no error.

III. A witness was permitted to testify that, before making the trade with plaintiff, Chingren had attempted to make a trade with some parties living at Newell, and that, in one of the conversations relating to this trade, Chingren said that Hughes was in the trade with him. The reception of this evidence is a subject of complaint. The record is not such as to raise the question argued by plaintiff. The objection to the question that elicited the evidence was as follows: "To which the defendant makes the same objection as last above." This is preceded by the same kind of an objection. Going back to the last specific objection, and it reads as follows: "To which the defendant Hughes objects to any reference to this plat, as the court admitted the plat in evidence on the ground that plaintiff would follow up that testimony, and prove the corner that was started from by this surveyor." Manifestly, this objection is untenable. Going back two or three questions, we find another full objection that had no more application than the one we

have quoted. Going back still further, we find several objections that were not specific enough to be considered. And still further back we find another full objection, that may be the one on which defendant relies. But examination thereof discloses that it does not relate to a question calling for anything that Chingren may have said regarding Hughes' connection with the transaction. In answer to that objection the court said, in effect, that he would instruct the jury with reference to that class of evidence. Chingren and Hughes were both defendants, and what Chingren said and did previous to the trade with plaintiff, tending to show fraud, was admissible as against him. *Starr v. Stevenson,* 91 Iowa, 687. Manifestly, there was no error here of which defendant Hughes may complain.

IV. The next complaint is that there is no evidence to support the claim that Hughes and Chingren were engaged in a conspiracy to defraud. A careful consideration of the evidence leads us to the conclusion that the verdict is not without support, and we cannot interfere.

V. Chingren was a witness in his own behalf, and was asked regarding some statements made to one Hay relating to Hughes' connection with the transaction. He denied having made such statements, and further said that Hughes had no connection with it, save as grantor and mortgagee. Hay was afterwards offered as a witness, and permitted to testify to a conversation he had with Chingren, in which Chingren said that Hughes owned the stock of goods. The evidence was properly admitted for impeaching purposes. *Neeb v. McMillan,* 92 Iowa, 201. Again, they were made while Chingren was in possession of the goods, and were properly received. *Turner v. Bradley,* 85 Iowa, 514; *Hardy v. Moore,* 62 Iowa, 65; *Allen v. Kirk,* 81 Iowa, 664. But it is said that the court should have limited the effect of this evidence by an instruction. As no such instruction was asked, defendant

cannot complain. *Puth v. Zimbleman,* 99 Iowa, 647. What has been said applies to the alleged error in receiving the evidence of one Hamilton. The court also instructed: "If a conspiracy or combination to defraud is established by other evidence, then the declaration of either party to such conspiracy or combination, made in carrying out the common purpose, will be held to be binding on both." This instruction limited the evidence of these witnesses, and, in the absence of more specific request, was sufficient.

VI.    The rule as to the measure of damages given by the court was as follows: "The difference between the actual value of the land conveyed to plaintiff, and what would have been its value if it had been such land as represented and shown the plaintiff, with 6 per cent. interest from date of transfer to time of trial." This is said to be erroneous. Plaintiff alleged that the land pointed out to him was worth from two thousand to two thousand four hundred dollars, and that the land he received was worth not to exceed four hundred dollars. He also alleged, in effect, that the land was valued in the trade at two thousand dollars, and asked judgment for two thousand dollars actual and one thousand exemplary damages. The verdict, as we have seen, was for over two thousand six hundred dollars, but the court reduced it to one thousand seven hundred and ninety dollars; being one thousand six hundred dollars, with interest from the date of the trade. Defendant Hughes says the verdict is evidence of passion and prejudice, and should be set aside. As the instruction did not limit the amount of plaintiff's recovery, it cannot be said, from the size of the verdict alone, that it is the result of passion or prejudice. *Baxter v. City of Cedar Rapids,* 103 Iowa, 599. But it is said that the instruction is erroneous because it does not recognize the actual value as fixed by the parties in their trade. Were we to concede that the value so fixed is controlling, yet the court did not err in his instruction.

It was good as far as it went, and, if defendant desired an instruction to the effect that the actual value was the price fixed by the parties, he should have asked it. *Cox v. Allen,* 91 Iowa, 468; *Howest v. Axtell,* 74 Iowa, 401. Moreover, the exact point now made does not seem to have been presented to the trial court. If it had been, we are not prepared to say there was error. The court was justified in ordering (as we have seen) a reduction of the verdict, and as, when reduced it did not exceed the amount claimed by plaintiff, there was no error.

VII. The deed from Hughes to Mrs. Chingren, and the mortgage back, were properly admitted in evidence. Evidence was also adduced, over defendant's objections, tending to show that while Burdick, Hughes' agent, was in charge of the stock, he sold goods at ridiculously low prices. This evidence was properly admitted for several reasons: *First.* It tended to show an effort to speedily dispose of the stock. *Second.* The goods sold were staples,—practically new goods. Defendant offered evidence to show that the stock was of much less value than the sum fixed for trading purposes, and introduced evidence as to its value after he removed it to Fonda, and attempted to account for the proceeds while at Barnum. *Third.* The evidence complained of was offered in rebuttal, and was proper, as bearing on the value of the goods received.

VIII. Lastly it is said that the verdict is without support as to defendant Hughes. We have already indicated our views on this proposition, and may say that, from the bare statement of the case, it seems to have been an unusual transaction. The character of the land, the alleged sale to Mrs. Chingren, the fictitious purchase price inserted in her deed, the conduct of Chingren in attempting and actually perpetrating a gross fraud, the fact that Hughes gained practically all the advantages of the trade, the evident fact that Mrs. Chingren was regarded as a mere figurehead, the conduct and admissions of Hughes with reference

to the stock of goods, the surrender by Hughes of his mortgage on the land, and the substitution of a chattel mortgage on perishable goods, together with many other circumstances, small in themselves, but all pointing in the one direction, led the jury to believe that defendant Hughes was a party to a conspiracy to defraud, and should be made to pay the penalty. As an appellate tribunal, we cannot say that the judgment is without support in the evidence, and, finding no error, it is AFFIRMED.