JOHN FAGAN, Appellant, v. E. W. HOOK.

**Abstract of title:** SHOWING OF GOOD TITLE. An abstract of title which discloses that a purchaser of land then under mortgage was not made a party to the foreclosure, but is still the holder of an adverse fee with right of redemption, does not show the right in another to convey the property under a contract providing for conveyance by a warranty deed with an abstract showing good title.

**Same:** GOOD TITLE. Good title means an estate in fee simple, a marketable title, one that can be resold or mortgaged to another who exercises reasonable prudence with respect thereto.

**Same.** A contract to convey good title has reference to the record title which may be epitomized in an abstract, and when it is further agreed to furnish an abstract showing such title, as a condition precedent, one cannot be required to rely upon any other evidence thereof than such as is contained in the abstract itself.

**Same:** PERFECTION OF TITLE. The statute authorizing the record of affidavits to explain defects in a chain of title has relation to apparent rather than real defects; so that one who has agreed to convey and to furnish an abstract showing good title cannot perform his contract by making of record a title resting solely in parol, through the medium of affidavits.

**Contracts for sale of land:** BREACH: RESCISSION BY PURCHASER. A vendor who has failed to furnish an abstract showing such title as he agreed to convey and is making no effort to perfect the same, is not entitled to a reasonable time to comply with his agreement after service of notice of rescission.

**Same:** RESTORATION OF PROPERTY. Where a vendee on contract leased the land at the suggestion of the vendor a delivery of the lease with the rent to the vendor was sufficient restoration of the property to sustain a rescission of the contract.

**Same:** ESTOPPEL. A purchaser of land on contract is not estopped to rescind for the vendor's breach to convey title by the fact that he failed to tender a lease and rent note prior to com-

mencement of his action; or that he listed the land for sale, where no prejudice resulted to the vendor.

Same: TENDER OF PERFORMANCE. Where time is not the essence of a contract for the sale of land and the vendor has failed to furnish an abstract showing good title, as agreed, at the time fixed for performance, the fact that the purchaser was not in position to make his payment at that time will not defeat his right to rescission on subsequently tendering the amount due, if the vendor is still unable to convey good title.

Exchange of properties: BREACH OF CONTRACT: MEASURE OF DAMAGES. Ordinarily, where an action is for the recovery of property and its value has been agreed upon by the parties, the measure of damages is the value thus fixed; but if the values designated in the agreement do not appear to have been specified with reference to the true worth of the property, but merely as incidental to some other purpose not involving the intention of determining that question, the measure to be applied is the fair market value.

Same. Upon rescission of a contract for the sale or exchange of real estate for personalty, the values of the property stated in the agreement do not govern the question of damages for the breach, since by rescission the contract is abrogated in its entirety; but upon failure to restore personalty which has been delivered the measure of recovery is its fair market value.

*Appeal from Hamilton District Court.*—HON. J. R. WHITAKER, Judge.

SATURDAY, NOVEMBER 18, 1905.

SUPPLEMENTAL OPINION MONDAY, MAY 20, 1907.

ACTION to rescind contract for exchange of personal property for land. The defendant in a cross-petition prayed for specific performance, which was decreed, and plaintiff's petition dismissed. The plaintiff appeals.— *Reversed.*

*Wesley Martin* and *E. A. Morling,* for appellant.

*D. C. Chase,* for appellee.

LADD, J.— The defendant was owner of 116.46 acres of land, and on November 7, 1902, agreed to convey the same to the plaintiff " by warranty deed, with abstract showing good title," on or before March 1, 1903, in consideration of " $70. per acre, to be paid second party as follows: $2,500. in fixtures, tools, and utensils, meat market on Second street, Webster City, Iowa, sold this day to first party by second party, and tools, fixtures, and utensils used in slaughter house, 1½ miles north of Webster City, and three head of horses, three colts, harness, four wagons, more particularly described in bill of sale from second party of even date herewith; and $500. as follows: Stock of meats in meat market, as shown by invoice to be taken Nov. 15th, and cash sufficient thereto to make up the $500.; and $300. Dec. 15, 1902; $2,500. by assuming a mortgage for that amount now against said premises; and the balance on March 1, 1903." All payments were made in conformity with the contract, save the last, which amounted to $2,352.20. This was tendered in writing March 24, 1903, and a warranty deed, with an abstract showing good title, demanded. An abstract had been sent to a bank at Emmetsburg for plaintiff's examination prior to March 1st, but it was so dilapidated that a new one was required. This reached plaintiff's attorney March 18, 1903, and upon examination he was able to discover nineteen defects in that to one tract and thirteen in that to the other, and his letter to this effect was returned to defendant, who submitted it to his legal advisor. With reference to the requisitions so made he declared the title marketable, and, with other suggestions, said as to the abstract of the first tract: " The school fund mortgage cuts off subsequent grantees of mortgagor, if made parties to the proceedings. They were all before the court, but John Stahl. By an affidavit it appears that John Stahl made no claim and occupied no part of the land, and that William H. Hook and his grantees had adverse possession for more than twenty years. This would cut off any equity of re-

demption existing at time of foreclosure in John Stahl, in my opinion." And to that of the other: "It appears at No. 8 that at time of foreclosure of mortgage referred to above the legal title to a part of the land appeared of record to be in the name of Henry Vegons. He should have been made a party to the foreclosure proceedings. However, as the grantors of Emory W. Hook have had adverse possession for over twenty years, any right of redemption he might have had would probably be cut off. I would suggest that, if he was not made a party to the foreclosure proceedings, an affidavit be procured showing the adverse possession of William M. Hook and his grantors, and that the said Henry Vegons made no claim and occupied no part of said premises since said foreclosure proceedings." Thereupon the defendant instructed the abstractor to correct the record and abstracts in accordance with his opinions. This had been done at the time of the trial, but he had not tendered them prior thereto.

We need do no more than refer to the requisitions mentioned in the above extracts. Land including a part of the first tract had been patented by the State of Iowa to Isaac Hook September 25, 1854. No conveyance

1. ABSTRACT OF TITLE: showing of good title. from the general government to the State appears. Hook conveyed 37 acres, one-half of which was of the land so patented to him, to one Mutter in 1856, and the latter deeded it to McNeeley in 1857, and McNeeley to John Stahl October 2, 1860. The abstract does not indicate that Stahl had ever parted with title. Prior to these conveyances, in October, 1853, Hook had executed a mortgage covering this land to the school fund commissioner, and this mortgage was foreclosed in 1864, and the land conveyed by sheriff's deed to Hamilton county February 1, 1865. But Stahl was not made a party to these proceedings, and so far as the abstract discloses is still owner of the fee, with right of redemption. As to him the decree of foreclosure was not effective and did not divest him of title.

*Landon v. Townsend,* 112 N. Y. 93 (19 N. E. 424, 8 Am. St. Rep, 712) ; *Fowler v. Lilly,* 122 Ind. 297 (23 N. E. 767) ; *Hays v. Tilson* (Tex. Civ. App.), 35 S. W. 515.

A like defect appears in the abstract to the other tract. It had been patented to Isaac Hook in 1854 and mortgaged to the school fund commissioner the same year. Henry Vegons acquired title to seventeen and one-half acres of the tract, through mesne conveyances under Hook, in 1857. The mortgage was foreclosed in 1864, and a sheriff's deed executed to Hamilton county the year after. The abstract fails to show that Vegons was made party to the foreclosure proceedings or has since parted with title. With these outstanding titles in Stahl and Vegons, it is manifest that the abstract did not show good title in the defendant.

By good title is meant nothing less than an estate in fee simple. *Gilespie v. Broas,* 23 Barb. (N. Y.) 370, 381. And though a good title has been held by some decisions to

2. SAME: good   title.

be one not absolutely bad, the great weight of authority is to the effect that the expression means a marketable title, one which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for a loan of money. *Moore v. Williams,* 115 N. Y. 586 (22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844) ; *Harrass v. Edwards,* 94 Wis. 459 (69 N. W. 69) ; *McCroskey v. Ladd* (Cal.), 28 Pac. 216 ; *Smith v. Turner,* 50 Ind. 367 ; *Ladd v. Weiskopf,* 62 Minn. 29 (64 N. W. 99) ; *Herman v. Somers,* 158 Pa. 424 (27 Atl. 1050, 38 Am. St. Rep. 851) ; *Allen v. Atkinson,* 21 Mich. 351, 361.

But according to the abstracts defendant had no title at all to these tracts. The attorney reading the abstract for defendant seemed to be of the opinion that these defects

3. SAME.

might be obviated by the fact, if such it was, that the land had been occupied by defendant's grantors adversely for the statutory period of limitation, and this might be made to appear by making affidavits thereof, having them recorded, and noted on the abstract.

But the plaintiff was not excepting to his ability to convey a good title, nor questioning the contention that such a title may be acquired by adverse possession. By the contract defendant was " to convey unto the second party by warranty deed, with abstract showing good title." This had reference to the record title, which might be epitomized in the abstract and was a condition precedent to his right to demand the deferred payment. *Lessenich v. Sellers,* 119 Iowa, 314; *Martin v. Roberts,* 127 Iowa, 218; *Spooner v. Cross,* 127 Iowa, 259; *Brown v. Widen* (Iowa), 103 N. W. 158. Nor was it enough that the title was in fact good. It should have so appeared on the abstract. *Lessenich v. Sellers, supra; Brown v. Widen, supra; Spooner v. Cross, supra; Boas v. Farrington,* 85 Cal. 535 (24 Pac. 787); *Noyes v. Johnson* (Mass.), 31 N. E. 767; *Sheehy v. Miles,* 93 Cal. 288 (28 Pac. 1046); *Zunker v. Kuehn,* 113 Wis. 421 (88 N. W. 605); *Heller v. Cohen,* 155 N. Y. 625; *Howe v. Hutchinson,* 105 Ill. 501; *Gwin v. Calegaris,* 139 Cal. 384 (73 Pac. 851); *Bruce v. Wolfe,* 102 Mo. App. 384 (76 S. W. 723). As said in *Brown v. Widen:* " The contract calls for an abstract showing good title, and nothing less than this would satisfy this condition, no matter what the vendor's real title might be."

The object of an abstract is to enable the vendee to pass upon the validity of the title, and to enable him to do so- it should contain everything material concerning its sources and condition. *Kane v. Rippy* (Or.), 23 Pac. 180; *Bumaby v. Equitable Reversionary Interest Society,* 54 L. J. Ch. 466; *Taylor v. Williams,* 2 Col. App. 559 (31 Pac. 504); 1 Cyc. 213. " The object of an abstract," says Mr. Curwen, in his work on Abstracts (section 36) " is to furnish the buyer and his counsel with a statement of every fact and abstract of the contents of every deed on record upon which the validity and marketableness of the title depend, so full that no reasonable inquiry shall remain unanswered, so brief that the mind of the reader shall not be distracted by irrelevant details, so methodical that counsel may form an

opinion on each conveyance as he proceeds in his reading, and so clear that no new arrangement or dissection of the evidence may be required. The buyer has the right to demand a marketable title. He has a right to demand that the abstract of title shall disclose such evidence of that title as will enable him to defeat any action to recover or incumber the land." The title may be good; but one to whom an abstract showing good title has been promised as a condition precedent is not bound to accept any evidence thereof, except that contained in the abstract. The vendee in such a case is not required to accept or rely on parol evidence of title, or information dehors the records, or the word of the vendor. That the title was not only to be good, but that the abstract was to so exhibit it, was a valuable consideration in entering into the agreement; for every one recognizes the superior salability of land with good paper title. Even if good title might be established by parol, the only evidence of adverse possession adduced was that of plaintiff, in response to the question: "How long had the land been occupied by the persons of whom you bought it, to your knowledge? A. It had been occupied between 12 and 15 years to my knowledge by the same fellows." There was no showing as to the character of their possession, nor whether in hostility to the true owners. The affidavits of Hook as to adverse possession had been recorded and noted on the abstract. The abstract, but not the affidavits, was introduced in evidence. It seems unnecessary to say that a condensed statement of a copy of a record of an affidavit was not admissible in evidence in proof of the facts therein recited, when the affidavits themselves were not admissible.

Evidently neither party proceeded on the theory that oral evidence of adverse possession might be considered. The theory of the defendant seems to have been that, though 4. SAME: perfection of title. such possession might not be proven, the abstract of title could be perfected by causing to be recorded affidavits that defendant's possession had been

adverse and noting these on the abstract. Affidavits generally are not recordable; for the Code, in designating those papers which may be recorded, by implication excludes all others. An exception, however, is found in section 2957 of the Code, providing that " affidavits explaining any defect in the chain of title to any real estate may be recorded as instruments affecting real property." The precise effect of this statute is not clear. It is enough in the instant case to note that it does not authorize the owner to supply a link in the chain by indicating, in the form of an affidavit, the oral evidence available to establish it. From the wording of the statute it was likely intended to enable the landowner to make of record explanations of apparent, rather than real, defects. Certainly it was not intended to enable any one to make of record a title resting solely in parol. Those in this case did not help the record. They were in the nature of hearsay, so say all the authorities (2 Cyc. 35), and not proof of what they purported to express. We conclude that the abstract did not exhibit such a title as defendant contracted that it should.

II.   Plaintiff caused notice of rescission to be served on the defendant April 8, and begun this suit April 9, 1903; and the latter insists that he was entitled to a reasonable

5. CONTRACT FOR SALE OF LAND: breach: rescission by purchaser.   time after notice to comply with his agreement. Whether he was not bound to be in a situation to perform on the day stipulated need not be determined. But see *Primm v. Wise,* 126 Iowa, 528; *Webb v. Hancher,* 127 Iowa, 269. The evidence shows that he was making no effort to remedy the defects in the abstract to which we have adverted. He was relying upon the advice that adverse possession met the situation, and even at the trial in November following had not remedied them. As he did not propose to perfect the abstract, there was no occasion to delay suit.

III.   The evidence shows that in reliance upon the performance of the contract on defendant's part the plain-

tiff on February 12, 1903, leased the land to one Sallee for
6. SAME: resto-      the term of one year from March 1, 1903.
ration of
property.        The rental was $250, which has been paid into
the hands of the clerk of court to abide the result of this
action; the parties stipulating that in event of a decree re-
scinding the contract it shall be paid to defendant, but to
plaintiff if specific performance is ordered.   Defendant
insists that the effect of leasing the land was to place
an incumbrance thereon, which prevented plaintiff from
restoring as good a title as was received.   That this was
essential may be conceded.   *Stevenson v. Polk,* 71 Iowa,
280; *Burge v. Cedar Rapids R. Co.,* 32 Iowa, 101.   But
the lease was executed with defendant's knowledge and with-
out objection.   The defendant himself was not occupying
the land.   It was leased to tenants, and he recommended
Sallee to plaintiff as a suitable tenant.   In these circum-
stances we think the delivery of the lease with the rent to the
defendant a sufficient restoration of the property.

IV.   It is said that, as plaintiff did not tender back the
note and lease prior to the beginning of the action, he is
estopped from electing to rescind.   But this court has held
7. SAME:          that it is in time if personal property even
estoppel.       is tendered for the first time in the petition
asking for rescission.   *McCorkell v. Karhoff,* 90 Iowa, 545.
Prior to ascertaining that defendant could or would not per-
form his part of the agreement plaintiff listed the land for
sale, and it is said that by this he is estopped from rescinding.
But it does not appear that defendant was misled thereby to
his prejudice, and for this reason the plea cannot be sus-
tained.

V.   Again, defendant urges that plaintiff was never
in a situation to comply with his part of the agreement.
There is no doubt that he experienced some difficulty in rais-
8. SAME:           ing the money, but the evidence that he had
tender of
performance.     arranged for more than enough to meet the
deferred payment is undisputed.   True, he did not have

it on March 1, 1903, the day fixed for performance. He did have a large portion of it, and had so arranged for the balance that he could have obtained it at the time of the written tender on the 24th of March, had it been accepted. Time was not made the essence of the contract, and as the delivery of an abstract showing good title was a condition precedent to the deferred payment, and it had not then been furnished, this was timely. It is said that plaintiff should have paid interest on the mortgage he assumed from January 1, 1903. It does not appear to have been due. Moreover, this portion of the contract was merely for the purpose of fixing the date from which interest on the mortgage debt was to be assumed.

VI. The answer sets up fraudulent concealment on the part of Fagan, but the evidence fails to sustain the charge. If part of the meats were injured, Frick advised defendant of the fact, and notwithstanding this information he accepted them at the prices stated in the invoice. The claim that property of others was included is without support. Considerable evidence was introduced bearing on the value of the property turned over to the defendant, but the parties themselves have agreed upon its value, as well as the value of the land, and by that they are bound. As defendant has disposed of the property, he must pay its value as stipulated.

We conclude that, as defendant failed to furnish the abstract as agreed, the decree of specific performance should be reversed, and a decree entered rescinding the contract, and also for judgment in favor of plaintiff for the money paid defendant and the value of the property delivered to him, with interest at the rate of six per cent. per annum from the dates of such payment and delivery, and that the rent money should be applied on such judgment.— *Reversed*.

Supplemental opinion.

PER CURIAM.— Appellee has asked for a rehearing on the ruling with respect to the measure of damages, insisting

that appellant should be allowed the market value of the personal property paid on the land only, rather than the value as fixed by the contract.

Ordinarily, where the action is for the recovery of property, and its value has been agreed upon by the parties, the measure of damages is the *quantum* thus fixed. Such has **9. EXCHANGE OF PROPERTIES: breach of contract: measure of damages.** always been the rule of this court. Thus in *Howes v. Axtell,* 74 Iowa, 400, it was said that, " when parties by solemn agreement fix a value to property, they are bound by it. The law will not in a case of this kind permit either party to dispute the value as settled by them." There the action was to recover for the difference in acreage of land conveyed and that represented to be contained in the tract, and the price fixed in the deed was held to be the value of the tract as represented. See, also, *Hallam v. Todhunter,* 24 Iowa, 166; *Connors v. Chingren,* 111 Iowa, 437; 2 Sutherland on Damages, 606; *White v. Street,* 67 Tex. 177 (2 S. W. 529); *Cummings v. Dudley,* 60 Cal. 383 (44 Am. Rep. 58); *Harrington v. Wells,* 12 Vt. 505. If parties definitely settle upon and agree to the value of their respective properties for the purpose of sale one to the other, no inquiry concerning actual values is permissible, as these are put beyond question by their having determined the worth thereof for themselves, and thereby fixed the measure of damages in event of a breach. If, on the other hand, the agreement is a mere trading contract, by the terms of which one party is to exchange certain property belonging to him for that of the other upon or by the payment of the difference, and to this end and for the purpose solely of accomplishing this result, but not to ascertain their actual values, estimates are placed on the respective properties, then neither party is bound by the values so estimated, and the measure of damages to be applied is that of *quantum meruit.* In other words, the values designated in the agreement to be binding on the parties must appear to have been specified as such, and not

as merely incidental to some other purpose not involving the intention of deciding the true worth.    The criterion in determining whether there has been a sale or exchange of personal property is whether there is a fixed price at which the things are to be exchanged.    If there is such fixed price, the transaction is a sale; but, if there is not, the transaction is an exchange.    Teidman on Sales, section 12.    This rule has been applied to dealings in land by the Court of Civil Appeals of Texas.    *Thornton v. Moody,* Tex. Civ. App. (24 S. W. 331).    See *Heywood v. Heywood,* 42 Me. 229 (66 Am. Dec. 277); *Harrington v. Wells,* 12 Vt. 505.

Appellee insists that the agreement was merely a trading contract, and therefore only the market value of the property should be allowed; but the price of the land was definitely fixed and also the prices at which the property should be credited thereon stipulated, and evidence introduced leaves it extremely doubtful whether these values were mere estimates.    So that, were the rules to which we have adverted applicable, we might be inclined to adhere to the conclusion stated in the opinion heretofore filed.

But we are not limited to the reasons urged by counsel in reaching the right result.    Upon rescission there remained no contract to fix the values of the property.    Upon the failure of the defendant to make good title to the land, the plaintiff had the right to affirm the continued existence of the contract and maintain an action for damages, or, at his election, he could rescind the contract and demand that defendant place him in *statu quo* by restoring to him the money, if any, which he paid and the property which he had delivered in fulfillment of the agreement on his part.    Plaintiff elected to pursue the latter course, and the only enforceable right he has is to be placed in the position he occupied before the contract which he repudiates was made.    He is not entitled to recover the profits of his bargain, for to do that he must affirm the contract,

10. SAME.

and this he has barred himself from doing by his election to rescind. The contract being rescinded, it stands for naught. It is avoided. See Abbott's Law Dictionary; Bishop's Contracts, 679; *Bank v. Maddox,* 4 Okl. 583 (46 Pac. 563). In its very nature rescission implies the extinction of the contract, and, once accomplished, neither party can base any right of recovery upon it. Plaintiff's right to demand a return or redelivery of the personal property is not because of the existence of any contract between them, but because there is none. If, upon proper demand for said property, the defendant fails or refuses to return it, he is liable to plaintiff as for a conversion, or, if plaintiff's claim may be said to sound in contract, it is the contract which the law implies whereby a party who has received property belonging to another is held to promise and undertake to surrender it to the true owner on demand therefor. *Freer v. Denton,* 61 N. Y. 492; *Byxbie v. Wood,* 24 N. Y. 607. He may recover nothing more than the property in kind, or, failing in that, its fair or reasonable market value. As having some bearing upon the question here discussed, see *Brigham v. Evans,* 113 Mass. 538; *Laraway v. Perkins,* 10 N. Y. 371; *Clark v. Mining Co.,* 28 Mont. 468 (72 Pac. 978); *Merrill v. Merrill,* 103 Cal. 287 (35 Pac. 768); *Nichols v. Pinner,* 18 N. Y. 312; *Dayton v. Warren,* 10 Minn. 233 (Gil. 185); *Yeomans v. Bell,* 151 N. Y. 230 (45 N. E. 552); *Reynolds v. Franklin,* 41 Minn. 279 (43 N. W. 53); *Warren v. Chandler,* 98 Iowa, 237.

Reverting to the evidence, we find that the meats were invoiced at values agreed upon subsequent to the execution of the contract. Appellee conceded in oral argument that the other property, priced in the contract at $2,500. was worth $500. and an examination of the record has confirmed the correctness of this estimate. The plaintiff is entitled to recover these amounts, together with moneys paid, with interest computed as indicated in the opinion.

With this modification, the former opinion will be adhered to.