J. CAPPEL, Appellant, v. G. C. POTTS et al., Appellees.

J. CAPPEL, Appellant, v. J. W. BASHAM et al., Appellees.

**VENDOR AND PURCHASER:** Defects Defeating Merchantableness of Title. A title which is legally debatable, and faced with good-faith threatened litigation, is not a merchantable title. So held where

the defects in the title hinged on the question whether a decree construing a will was, in view of the provisions of the will, binding on after-born children.

*Appeal from Buchanan District Court.*—H. B. BOIES, Judge.

NOVEMBER 23, 1921.

ACTION by plaintiff, to recover money paid to defendants on a contract for purchase of real estate, because of their failure and inability, as plaintiff alleges, to furnish an abstract showing merchantable title, as required by the contract. The two cases named in the caption were brought separately, but since they involved the same questions, they were by agreement consolidated, and tried as in equity. Equitable relief was asked, but it is conceded now that the only question is whether plaintiff is entitled to recover the money paid by him on the execution of the contract, with interest, and the damages claimed. The trial court found that the abstracts of title tendered by defendants did present a merchantable title to the lands; that defendants did have a good and sufficient title to their lands in fee simple; and that they tendered conveyance thereof to plaintiff. The petitions of plaintiff were dismissed, and judgment rendered against him for costs. The plaintiff appeals.—*Reversed.*

*M. A. Smith* and *Hasner & Cherney,* for appellant.

*M. W. Harmon* and *W. B. Ingersoll,* for appellees.

PRESTON, J.—The defendants in their answer claimed that they had tendered performance according to the contracts, tendering deeds and merchantable abstracts of title, and that they were still ready, able, and willing to perform. The questions are, as stated by plaintiff and conceded by defendants, as to whether defendants did tender to plaintiff abstracts of title showing merchantable title, and whether defendants have good and sufficient title in fee simple to the lands contracted to be conveyed. At the outset, it should be said that, in view of the nature of the objections made to the abstract tendered, it may be somewhat difficult to determine the only question in this

case (which is whether the abstract shows merchantable title), without appearing to determine questions affecting minors and others who are not parties to this proceeding. It is not our purpose to now pass upon such questions. If there is enough doubt about it so that the title, or the title shown in the abstract, is not merchantable, under the rule, then plaintiff is entitled to recover. The written contract was entered into July 23, 1919, in the Potts case; and at the time of the execution of the Potts contract, plaintiff's assignor paid $1,000 on the purchase price, which plaintiff asks to recover. This contract was made between Potts and one Scanlan, who assigned his claim to plaintiff. The other contract was executed on July 5th, and was between defendant Basham and one Gallup, and was assigned by Gallup to plaintiff. Gallup gave his earnest-money note for $1,000, due March 1, 1920, without interest if paid when due, which was to be returned when the trade was completed and the property delivered to him. Plaintiff asks that defendants be charged to pay plaintiff the $1,000 deposit, or that the note be relinquished or surrendered, with interest, expenses, damages, and so on. Plaintiff alleges in his petition that he paid Gallup $900 for the assignment of the contract. Deeds were to be executed March 1, 1920, when another payment was to be made, and mortgages given. The abstract was to be submitted for examination by August 1, 1919, and plaintiff was to report defects within a specified time. The contracts provide that defendants were to furnish abstract of title, showing good, clear, merchantable title to the property. This action was brought April 8, 1920.

It is conceded that deeds were tendered, also abstracts of title. Numerous objections to the abstracts were made by plaintiff within the proper time, one of which is that the abstract in its present form is not such as will meet the requirements of the Federal Farm Loan Banks, or of the insurance companies. Plaintiff says that it should be completely abstracted in the form now required, showing, among other things, acknowledgments, considerations, deeds, mortgages mature, full abstract of estates, actions, etc.; that, in its present form, it is impossible to determine the exact status of the title. Another objection: The estate of Anton Lahner should be fully abstracted, as should

the proceedings to construe will and partition proceedings, at No. 45. Another: That the finding of the trial court in the proceedings to construe the will of Anton Lahner is contrary to the intention of the testator, and, being *ex parte* in its nature, the title was not acceptable until the entire question had been passed upon by the court in an action wherein the children of Anton Lahner and the heirs of any who are dead are parties; that, if the original heirs of Anton Lahner are not dead, and there is still a possibility that children may be born to them, the question could not be definitely settled at this time; that it should be presented to the court in an action to quiet title. No further abstract was furnished, to meet the objections. The abstract, brought down to October 14, 1919, shows title by mesne conveyances of the Basham land from the government to Anton Lahner. This land was set off to Charles Lahner in the partition suit, and thence to Basham. The Potts abstract was brought down to February 23, 1920, and shows like conveyances to Anton Lahner, and its being set off to Mary E. Destival, daughter of Anton Lahner, in a partition suit, and a conveyance from her to Heidt, and thence by warranty deed from Heidt to Potts. Defendants in each case derived title from the same source. Anton Lahner died in January, 1892, seized in fee of the lands in question.

The material part of the will of Anton Lahner in controversy is as follows:

"All the real estate of which I may die seized remaining after the payment of my debts and said sum of two hundred dollars to my son Albert and all real estate purchased as herein directed out of the personal assets of my estate, I give, devise and bequeath as follows: To my son Charles Lahner, one eighth thereof; to my son Thomas Lahner one eighth thereof; to my son Phillip Lahner, two eighths thereof; to my daughter Mary Lahner, one eighth thereof; to my daughter Emma Lahner, two eighths thereof; to my daughter Rowa Lahner, one eighth thereof; to be theirs during their natural lives and after their death the share of each to descend in fee simple to their children. But should any of said children die without issue, then in that event, the share of such child shall be divided among the re-

maining children pro rata as hereinbefore set out in case all have issue.''

Appellant contends that the will gives to the children of deceased only a life estate, with a remainder to their children, if there are any, and under certain conditions. The appellees contend that the children took a fee-simple title. They concede, however, that, since the deceased did not, in his will, give a share of the estate (except $200) to his son Albert, there would be a question as to whether he would be included in the division among ''the remaining children,'' etc. At the time of the death of testator, there were no grandchildren. A grandchild was born soon after, who was the child of Thomas Lahner. Her name is Genevieve. It is claimed by appellant that the adult children of testator who were given a share were not satisfied with the provisions of the will giving them a life estate, and that, for the purpose of getting the fee title, they brought an action for the construction of the will; that they brought such an action against their brothers and sisters, who were minors, wherein the defense was perfunctory. However this may be, such an action was brought in 1894, by three of the six who took under the will, to wit, Thomas, Charles, and Mary, against the other three, Phillip, Emma, and Rosa (Rowa). Albert was also made a party, as was Genevieve, the nine-months-old child of Thomas, and the only grandchild of testator. The proceedings in that case and in a partition case brought soon thereafter were introduced in evidence by the defendants. The petition for the construction of the will recites that the will is very uncertain as to its meaning, and difficult of construction; that it is uncertain whether the three plaintiffs and defendants Phillip, Emma, and Rosa have a fee-simple interest in the real estate, or only a life estate; that, at the time of his decease, Anton had no grandchildren, and that none were born to any of his children during his lifetime, and for more than a year after his death; that the will is uncertain and indefinite, and makes no disposition of the property; and that its provisions cannot be understood or carried into effect. The plaintiffs therein ask that the will be construed to vest a fee-simple title in the six children named in the will, or that it be set aside as void for uncertainty. It is claimed by appellant that the service

of notice on Genevieve was not according to the statute, and that the notice and proceedings as to her are void. The return is as follows:

"I served the same personally on the within named defendants, Phillip Lahner, Emma Lahner, Rosa Lahner, and Genevieve Lahner, by reading the same to them and delivering to each of them a true copy thereof, and by giving Emma Lahner, Rosa Lahner, and Genevieve Lahner a copy of the petition therein referred to, they being under 14 years of age, and by reading said notice to Thomas Lahner, father of Genevieve Lahner, he being her father."

The contention is that this notice was not made in the manner required by the statutes then in force, Section 2604, Code of 1873 (Section 3809, McClain's Code of 1888) and Section 2614, Code of 1873 (Section 3819, McClain's Code of 1888). The point, as we understand it, or one of the points, is that the return of service does not show that a copy was delivered or offered to Thomas Lahner, the father of Genevieve. It seems that a guardian *ad litem* was appointed; but it is contended by appellant that, since the service of notice did not confer jurisdiction upon the court, the appointment of the guardian *ad litem* did not give jurisdiction. Appellant cites *Allen v. Saylor*, 14 Iowa 435; *Good v. Norley*, 28 Iowa 188, 198. Other cases might be cited, and there may be other reasons why this service does not comply with the statute. We shall not stop to discuss them, because, as said, we are not determining that point.

It is thought by appellees that it is a case merely of defective service. It may be ultimately so held, when the question is presented, if at all, for determination. It should be remembered, however, that rights of the minor, and perhaps other minors, if other children are born to the children of testator, are involved. To meet the objection raised by appellant as to the sufficiency of notice, it is contended by appellees that the minor, Genevieve, is one of a class, and that service upon her is binding upon all in the same class. The thought is that service on her would bind all the children hereafter born to the six children of the testator. The trouble about this is that the children of each of the sons and daughters of testator would constitute a class by themselves. One class would be the brothers

and sisters of Genevieve, born to the son Thomas; but children of the brothers and sisters of Thomas would not be in the same class as Genevieve,—at least, we can say now, without determining the question, that it is a fairly debatable question. Both parties concede that the will was construed as giving to the six children of testator named therein a fee-simple title. At the same term of court, in 1894,—we take it, pursuant to the construction of the will,—the same three adults, as plaintiffs, brought an action of partition, making the other three children of deceased, Phillip, Emma, and Rosa, parties defendant. Neither Genevieve nor any other, except such three, was made a defendant. Partition was had, and two of the shares set off are subjects of this controversy.

Before the date for closing the deal, plaintiff had the abstracts examined by four or five different lawyers and abstracters, who reported that the title as shown by the abstracts was unmerchantable. A lawyer testified that he regarded the abstracts as unmerchantable, and that the grandchildren of testator had an interest in said lands; that he had been employed for the grandchildren to bring suit on their behalf to establish their interests; and that he was going to do so; and that he so informed plaintiff, in the fall of 1919. Six of the grandchildren of testator, five of them children of his daughter Mary, and one the son of the son Charles, filed their claims to an interest in said real estate, under Chapter 270, Acts of the Thirty-eighth General Assembly, setting out the facts in relation thereto. These were not filed until after the date for the examination of the abstract, but they were filed before the transaction was to be closed, March 1, 1920, and within a year from the time of the taking effect of Chapter 270. Plaintiff notified defendants that the abstracts were not acceptable, and claimed that they did not show a merchantable title, because of the matters before set out. Plaintiff was ready, willing, and able to carry out his part of the contracts on March 1, 1920, and made arrangements to do so, but refused to accept the performance offered by the defendants. Plaintiff testifies that he paid, or became liable to pay, expenses in having abstracts examined, in the amount of $135. The amount actually paid out was $40, $25 to one firm of lawyers and $15 to another. It appears that

defendant Potts received the $1,000 in money on the purchase. It is not so clear as to what right plaintiff has in the Gallup note. He testifies:

"I didn't pay any money on the Gallup note, but he has my note for $1,000 that I must pay if I get the farm. No conditions on the note,—a straight promissory note. It is in the bank, to be held there in escrow, only to be turned over in case the deal is closed. The contracts are with the bank. Gallup put up a note for $1,000, and I assumed that note. In the Potts case, there was $1,000 which I put up. I sent Scanlan to buy his farm. I am liable on Potts, certainly, because I have $1,000 there,—you have got my money."

It does not appear where the earnest-money note given by Gallup for $1,000 is. We assume that it, as well as the $1,000 note given by plaintiff, is in escrow in the bank, with the contracts. If the notice in the action to construe the will, and the proceedings had thereafter, are invalid, then the question comes back to the construction of the will.

As before said, for obvious reasons, we ought not to definitely pass upon such questions at this time. It is enough to say that the questions raised as to the title are fairly debatable. Litigation is threatened, which appears to be in good faith.

It is contended by appellees that title is not unmerchantable when no question of fact is involved, and it is good as matter of law. *Buchan v. German Am. Land Co.*, 180 Iowa 911. In our opinion, that is not the situation in the instant case. It is conceded that merchantable title does not mean a title free from every technical defect that can be conjured up, or a title free from all suspicion or possible defect; and that a title good as a matter of law is not rendered unmarketable by the possibility of vexatious litigation, or because attorneys have advised against accepting the title. The rule as to merchantable title, briefly stated, and as laid down in the cases, is that the test is whether a man of reasonable prudence, familiar with the facts and appraised of the questions of law involved, would, in the ordinary course of business, accept such a title as can again be sold to a reasonable purchaser. *Buchan v. German Am. Land Co.*, supra; *Billick v. Davenport*, 164 Iowa 105; *Fagan v. Hoak*, 134 Iowa 381, 385; *Upton v. Smith*, 183 Iowa 588, 590. Where

defects exist in the record, or there are known facts which cast doubt upon it, the title is unmerchantable, on the ground that it is subject to future litigation.

A title which exposes the party holding it to litigation is not marketable. *Buchan v. German Am. Land Co.,* supra; *Miller v. Bronson,* 26 R. I. 62 (58 Atl. 257). We take it, this means good-faith litigation, and not litigation trumped up for the purpose of aiding one or the other of the parties to escape performance of the contract.

We think the trial court erred in finding for defendants. We think plaintiff is entitled to recover the $1,000, with interest from the date of payment, against the defendants in the Potts case. In the Basham case, we do not understand that plaintiff has paid them anything. If plaintiff has paid Gallup $900, as he alleges in his petition, or $1,000, as he testifies, for the assignment, or has assumed the Gallup note, that would be a matter between plaintiff and Gallup. As we understand it, there are two notes out, one given by plaintiff for $1,000 and the other given by Gallup for $1,000, assumed by plaintiff, which are in escrow. Doubtless plaintiff would be entitled to the return of his note, and possibly to the return of the Gallup note to him for Gallup.

Because of the uncertainty in the record as to the two $1,000 notes given by plaintiff and by Gallup, the decree of the district court is reversed, and the cause remanded, with directions to enter a decree in harmony with this opinion, and to determine the matter as to such notes.—*Reversed and remanded.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.