M. L. BILLICK and MARY E. BILLICK, v. GEORGE W. DAVENPORT and EMMA DAVENPORT, Appellants.

Contract for exchange of property: TENDER: SUFFICIENCY. Where one of the parties to a contract for the exchange of lands, who was obligated to pay a cash difference, offered to pay and had more than the amount available, which would have been produced had not its production been waived, the tender was sufficient.

Same: ABSTRACT: MERCHANTABLE TITLE. A contract to furnish a "merchantable abstract of record," requires that it shall epitomize the record, simply, but must be one which is acceptable in the ordinary course of business to a reasonably prudent purchaser or mortgagee, when advised of the facts and of the law involved.

Same: MERCHANTABLE ABSTRACT: DEFECTS. An abstract of title disclosing that land in a foreign state was purchased of the state by plaintiff's remote grantor, one "Price," the patent reciting "to have and to hold the same * * * unto said R. R. Rice and to his heirs and assigns forever," did not disclose a "merchantable title of record," and an affidavit that the land was in fact patented to Rice and that the mistake was that of the recorder did not cure the defect, there being no statutory provision of the state au-

thorizing the correction of such discrepancies by affidavit, or for recording the same.

**Same.** The judgments of a Federal Court constitute liens upon real estate located in the county where the court is held, and an abstract failing to contain a certificate showing that there were no judgments of that court affecting the title was not merchantable.

**Same.** Under a contract to convey land subject to a stipulated amount of mortgage indebtedness, an abstract showing a greater amount of unsatisfied mortgages, though in fact a portion of the indebtedness was paid, was defective in failing to show the actual extent of the incumbrance; in the absence of some satisfactory extraneous evidence showing payment or a ,deposit of money to cover any possible difference.

**Foreign laws and usages:** EVIDENCE: CONCLUSION. The unwritten law of another state and the usage and practice under its written law may be proven by the evidence of attorneys practicing in that· state; but the opinion of attorneys engaged in practice in a foreign state that an abstract of title to land in that state was not merchantable was incompetent, because a mere conclusion.

**Specific performance:** CONDITIONS PRECEDENT: TENDER. The burden of proving tender of performance substantially as provided in a contract for the exchange of lands is upon the party seeking specific performance of the contract; and this includes the agreement to furnish a ''merchantable abstract of record'' at the time of exchanging deeds, independent of any requisitions by the other party; and a failure to do so will defeat specific performance.

*Appeal from Keokuk District Court.*—HON. HENRY SILWOLD, Judge.

TUESDAY, FEBRUARY 17, 1914.

SUIT for specific performance resulted in a decree as prayed. The defendants appeal.—*Reversed.*

*J. C. McCoid* and *Stockman & Baker,* for appellants.

*Dan W. Hamilton* and *Irving C. Johnson,* for ·appellees.

LADD, C. J.—The parties hereto entered into a written contract November 18, 1912, for the exchange of farms. Plaintiff's farm was located in Bourbon county, Kan., contained four hundred and eighty acres, was estimated to be worth $28,800, and was to be conveyed subject to a mortgage of $7,160. Defendant's farm was situated in Keokuk county, contained two hundred and eighty acres, was estimated to be worth $35,000, and was to be conveyed subject to a mortgage of $8,000. The deal was to be closed January 1, 1913, at the time of the exchange of deeds, and each was to "deliver unto the other a merchantable abstract of record showing title in the one so conveying," and "at the time of the exchange of deeds and abstracts, as aforesaid, the parties of the second part are to pay unto parties of the first part the sum of $5,360 in cash." Time was of the essence of the contract. It was made subject to approval on inspection of the Kansas farm. George W. Davenport looked at this shortly thereafter, and approved the contract. About the middle of December following, an abstract thereof was furnished Davenport who on the 19th of that month mailed it to Billick's attorney, writing:

I desire to state from my examination of this title that it does not comply with my contract, and it does not show a good merchantable title of record. I do not care to go to the trouble or work of pointing out all the specific defects in the title, for if I made such an attempt, I might waive those that I (in my hurried examination) may have overlooked. You are an attorney and I presume are representing M. L. Billick and wife and as an attorney you ought to know what it takes to make a title such as the contract calls for. This deal could not be closed up as you know prior to Jan. 1, 1913, and if your people expect to close up this deal at that time I will expect them to comply with their contract. I will meet you at Albert Ball's office in Delta, Keokuk county, Iowa, on the afternoon of Jan. 1, 1913. I will then make a more careful examination of these papers with a view of closing up the deal. I do not wish anything I say in this letter to be understood as waiving any part of my contract with the Billicks.

The parties, together with their attorneys met in Ball's office, as proposed, on January 1, 1913, and the abstract and conveyance of the Kansas land was submitted to Davenport's attorney. After examining the same for some time, he rejected the abstract as not being merchantable, declining to point out specific defects, for that by so doing he might waive others, and declared Billick would rescind the contract because of the abstract not complying with the contract.

As the abstract to Davenport's land was satisfactory, Billick's attorney tendered Davenport the agreed difference of $5,360. The production of money was waived provided it was at the bank. Billick had $3,000 at the bank at Delta, and it had set apart for him $3,500 of its money at the instance of a bank at Oskaloosa. A note was to be executed therefor if the bank's money were used. The money then was available at the bank, and would have been produced had not defendant's attorney waived its production and the tender was sufficient. On the following day, this suit for specific performance was begun, and the only issue to be determined is whether the abstract was such as Billick was, by the contract, required to furnish.

*1. CONTRACT FOR EXCHANGE OF PROPERTY: tender: sufficiency.*

It will be observed, at the time of the exchange of deeds, each was to deliver unto the other a merchantable abstract of record, showing title in the one conveying. This was tantamount to exacting an abstract disclosing a merchantable title. Such a title is said to be one which can again be sold to a reasonable purchaser, or mortgaged to a person of reasonable prudence as security for a loan of money. *Fagan v. Hook*, 134 Iowa, 381. The test is whether a reasonably prudent man, familiar with the facts and apprised of the question of law involved, would accept such a title in the ordinary course of business. *Williams v. Bricker*, 83 Kan. 53 (109 Pac. 998, 30 L. R. A. (N. S.) 343). The facts, however, must be such only as appear of record, for it was "a merchantable ab-

*2. SAME: abstract: merchantable title.*

stract of record" which was to be furnished. Such a one merely epitomizes the record without anything *aliunde*. *Lundy v. Surls*, 144 Iowa, 670; *Fagan v. Hook*, 134 Iowa, 381.

Was the abstract such as required? We think not, and will point out some of the defects which seem to us fatal.

I. The first recital in the abstract is of a patent of the N. E. ¼, section 36, township 25 south, range 22 east, fifth p. m., from the state of Kansas, dated January 9, 1886, and recorded in the month following:

Which said tract has been purchased by R. P. Price according to the provisions of the act of the Legislature of the state of Kansas, approved February 22, 1864, entitled an act to provide for the sale of school lands and acts amendatory. Now know ye that the state of Kansas in consideration of the premises and in conformity with the said acts of the Legislature of the state of Kansas has given and granted, and by these presents does give and grant, unto the said R. P. Price and to his heirs said tract above described. To have and to hold the same, etc., unto the said R. P. Rice and to his heirs and assigns forever.

The purchase was by Price and the grant to him and, though it is recited that Rice was to hold, etc., there can be no doubt but that title passed to Price. An affidavit appears to have been made by one Smith that

**3. SAME: merchantable abstract: defects.** he was familiar with the transaction, that the patent was to Rice, and that the mistake was that of the recorder. But the laws of Kansas contain no provision for the correction of discrepancies in names and the like by affidavits, nor for the recording of these, and therefore the affidavit did not effect an amendment of the record. As the land was in a school section, it was not necessary to trace title of record beyond the state, but, as plaintiffs took under R. P. Rice through mesne conveyances, and title appeared of record in R. P. Price, the defect rendered the abstract of the record unmerchantable.

The United States District Court sits at Ft. Scott, the county seat of Bourbon county, Kan., and its judgments constituted liens on real estate in that county according to the laws of that state and act of Congress, approved August 1, 1888. See *Bank v. Clark,* 55 Kan. 219 (40 Pac. 270) ; *Blair v. Ostrander,* 109 Iowa, 204. No certificate was attached to the abstract showing the land not subject (to) any liens of the United States courts.

4. SAME.

Again, the abstract disclosed the existence of a mortgage securing an indebtedness of $8,000, dated September 25, 1909, and another of $400, of even date, and a third mortgage, dated October 26, 1911, securing an indebtedness of $500. The record then disclosed an incumbrance of $8,900, instead of $7,160, as stipulated in the contract. No explanation of this appears to have been made, though it subsequently appeared that the $500 mortgage had been satisfied December 26, 1912, though not shown on the abstract, as it had been certified December 10th previous, and $1,000 had been paid on the $8,000 and $140 on the $400 mortgage. But defendants were entitled to some showing, other than Billick's word, of these partial payments, and none was given. Of course, partial payments of the incumbrances could not well be made to appear of record, and this was not essential. All necessary was that appropriate evidence thereof be supplied, such as the notes paid or receipts from the present holders of the incumbrance or statements by them, or something equally convincing. If this could not have been done, enough money to cover any possible contingency might have been deposited with a third person or bank, to be held subject to the production of such proof. But it was no part of defendants' obligation to propose either of these courses or arrange therefor. They might rely on the abstract. They were not advised that the incumbrances had been reduced in a manner which would have been deemed acceptable by a person of ordinary prudence. Other criticisms of the abstract need not be considered.

5. SAME.

Two attorneys at law, who were and for many years had been engaged in the practice of their profession in Kansas, testified, over objection, that in their opinion the abstract did

6. FOREIGN LAWS
AND USAGES:
evidence: con-
clusion.

not disclose a merchantable title, citing defects to which we have reverted and others. The unwritten law of-another state or foreign country may be so proven. *Banco De Sonora v. Banker's Mutual Casualty Co.,* 124 Iowa, 576. And the usage and practice under the written law of another state may also be shown by the evidence of those conversant therewith. *Greasons v. Davis,* 9 Iowa, 219; *Crafts v. Clark,* 38 Iowa, 237. Had the witnesses been so limited, there could be no doubt as to the competency of their testimony. Their ultimate conclusions, based on the facts and the law as to whether the abstract disclosed the kind of title exacted, however, were not competent as evidence. These were mere opinions or conclusions, and not testimony of facts, as is that of what the law or practice in a foreign state may be, and, like other conclusions deduced from provable facts, cannot be considered in aid of judgment by the court. *Brackenridge v. Claridge,* 91 Tex. 527 (44 S. W. 819, 43 L. R. A. 593). We agree with them in this instance, however, in saying that the defects mentioned rendered the abstract unmerchantable.

To put defendants in default, the burden was on plaintiffs to tender performance substantially as agreed. They

7. SPECIFIC PER-
FORMANCE: con-
ditions prece-
dent: tender.

undertook to furnish defendants at the time of the exchange of deeds "a merchantable abstract of title."

This was as essential as the tender of the deed or the difference to be paid and, though the making of requisitions with respect to defects in the abstract may be approved, they were not bound to do so, but might insist upon the submission of such an abstract as agreed upon as a condition precedent to performance. *Lessenich v. Sellers,* 119 Iowa, 314. Indeed this seems to have been contemplated, for the abstracts were to be submitted "at the time of the exchange of deeds."

Whether an abstract such as stipulated shall be furnished, independent of requisitions of the other side, depends on the condition in the contract, and not the kind of title to be exemplified, as seems to be thought by appellees; and, as the stipulation was that a "merchantable abstract of record" was to be furnished, and this was not done, plaintiffs were in default, and are not entitled to specific performance.— *Reversed.*

DEEMER, GAYNOR, and WITHROW, JJ., concur.