FRANK H. CULLEY, Appellee, v. GEORGE T. DIXON et al., Appellants.

**VENDOR AND PURCHASER:** Compliance With Contract. Compli-
1   ance by a vendor with that part of his contract which obligates
    him to sell "all his right, title, and interest" to described lands, is
    not sufficient when other parts of his contract obligate the said
    vendor (1) to furnish abstract showing good *merchantable* title, and
    (2) to convey by *warranty* deed.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Rescission Be-
2   cause of Enlarged Exceptions. A purchaser who contracts to ac-
    cept a title burdened with certain specified exceptions may rescind
    when proffered a deed with materially enlarged exceptions.

**VENDOR AND PURCHASER:** Performance of Contract—Abstract
3   Showing Merchantable Title. An abstract of title which reveals un-
    satisfied mortgages and contracts relating to the land is not mer-
    chantable.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Rescission—
4   Unreasonable Retention of Title Papers. Rescission by a purchaser
    will not be barred by the act of physically taking a deed and ab-
    stract into his possession and retaining them for a reasonable time—
    which time must necessarily depend on the circumstances of each
    case.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Rescission—
5   Sufficiency of Notice. Notice of the purchaser's objection to a
    deed and abstract of title and of his rescission is all-sufficient when
    given to the vendor's attorney in fact, it appearing that the vendor
    had full knowledge thereof and acted thereon.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Resale—Effect.
6   A purchaser may rescind for failure of the vendor to meet the terms

of his contract, notwithstanding the fact that the said purchaser has *resold* the property, when the resale has been so canceled as to present no obstacle to placing the vendor *in statu quo.* .

**VENDOR AND PURCHASER:** Remedies of Purchaser—Rescission. A
7  rescission of a contract for the purchase of land, accompanied by an offer to surrender all right under the contract and to do full equity, is amply supported, on the issue of accounting, by proof that the land was unimproved, and that the purchaser had never received any rent or income therefrom.

Headnote 1. 39 Cyc. p. 1446. Headnote 2. 39 Cyc. p. 2009. Headnote 3. 39 Cyc. p. 1518. Headnote 4. 39 Cyc. p. 1527. Headnote 5. 39 Cyc. p. 2051. Headnote 6. 39 Cyc. p. 1432. Headnote 7. 39 Cyc. p. 1423.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

JANUARY 13, 1925.

ACTION in equity by the vendee, to rescind a contract for the purchase of land and to recover the purchase price paid. The facts are stated in the opinion. From a judgment and decree for plaintiff, defendants appeal.—*Affirmed.*

*C. H. Pasley* and *J. Y. Luke,* for appellants.

*Lee & Garfield,* for appellee.

VERMILION, J.—I.  The chronology of the case is of importance.  In 1918, the appellee contracted in writing with C. H. Pasley, as attorney in fact for the appellants, for the purchase from them of a tract of land in the state of Minnesota. There were certain deferred payments to be made.  In February, 1922, at which time the unpaid installments amounted to $2,604, it was agreed in parol between appellee and the appellant F. E. Brown, acting for himself and the other appellants, that $2,000 cash and a note for $300, due in one year, would be accepted in lieu of the unpaid installments, and that appellee would thereupon be entitled to a conveyance of the land.  The $2,000 was paid about February 6, 1922, to the bank at which the deferred payments were to be made, with instructions that

the money was to be held by the bank until the deed and abstracts for the Minnesota land were delivered. A deed and the abstracts were put in the bank a few days before April 7, 1922, and on that date appellee received them, and executed his note for $300, and the $2,000 was placed to the credit of the Ames Land Company, under which name appellants were operating. Appellee took the deed and abstracts to attorneys for examination, and on May 5th they were by the attorneys sent to Pasley, or left at his office, with written objections to the deed and abstracts. On August 12, 1922, appellee caused to be served on Pasley, as attorney in fact, a notice of rescission of the contract of purchase. On September 4th following, Brown took the deed to the attorneys for appellee, and exhibited an affidavit designed to meet one of the objections to the abstracts. The deed was returned to Pasley. No change had been made in the deed or abstracts at that time, and neither was thereafter in any manner in the possession of appellee or his attorneys, or tendered to him until on the trial. This action was commenced on November 3, 1922.

II.  The appellee predicates his claim of a right to rescind the contract upon the alleged failure of the conveyance tendered to conform to the terms of the written contract, and of the abstracts to show a good, merchantable title to the land. The original contract provided that the party of the first part agreed to sell to the party of the second part (appellee), on the performance of the agreements of the party of the second part, "all his right, title and interest in and to" the described land, subject to certain mineral reserves. It further provided that, "when all is paid, first party will deliver abstracts," and also contained a provision as follows:

1. VENDOR AND PURCHASER: compliance with contract.

"But if such sums of money, interest and taxes are paid as aforesaid, promptly at the time aforesaid, the party of the first part will, on receiving such money and interest, execute and deliver at its own cost and expense a warranty deed of such premises as above agreed and furnish an abstract showing a good merchantable title."

It is the contention of the appellants that the contract was

only for the sale of the grantors' right, title, and interest in the land, and that they were not obligated to furnish a good title, or a better title than they had.  While it is true that the contract provided that the vendors would sell, and the vendee purchase, all their right, title, and interest, it also provided that, on receiving payment, the grantors would execute and deliver a warranty deed, as agreed, and furnish an abstract showing a good, merchantable title.  These provisions are not inconsistent.  Practically identical provisions were considered in two prior decisions of this court.  *Bull v. Weisbrod*, 185 Iowa 318; *Henderson v. Beatty*, 124 Iowa 163.  In the former, the contract provided that the grantor agreed to sell his right, title, and interest in the land, and, upon payment's being made, to execute to the purchaser a warranty deed, as agreed.  It was held that, by the agreement to execute a warranty deed, the vendor undertook to make a warranty deed with such covenants as the statute contemplated,—that is, to warrant the title against all persons whomsoever (Section 2958, Code of 1897, Section 10084, Code of 1924); and that the purchaser was not required to take the title subject to an existing mortgage.  In the latter case, where the agreement was to sell the vendors' right, title, and interest, and also to furnish an abstract showing a good and perfect title in the vendors, it was held that, although they did not contract to convey a perfect title, they did agree that their abstract should exhibit a perfect title in them, and it was said:

"This would demonstrate to the purchasers that they were acquiring a perfect title, even though the sellers might not covenant by their warranty deed that it be such.  There is no inconsistency in the several provisions of the contract.  The conveyance stipulated was, in effect, a special warranty deed of the land, the title to which was to be exemplified by the abstract, showing it to be perfect."

Here, not only did the appellants agree to furnish an abstract showing a good, merchantable title, but also agreed to convey by warranty deed.  That is to say, they agreed to sell their right, title, and interest in the land, to furnish an abstract showing such title to be a good, merchantable one, and to execute a warranty deed, warranting such title against all persons whom-

soever. Moreover, appellants evidently so construed their obligation. The deed they executed and tendered, purported to convey, not merely their right, title, and interest, but the whole estate, subject only to certain reservations, to be presently considered, and contained covenants of general warranty and freedom from incumbrances, except the reservations to be mentioned. The contract entitled appellee to a conveyance of a good, merchantable title by warranty deed, subject only to such reservations or exceptions as were expressly provided for in the contract, and to an abstract showing such title.

III. The contract provided that the sale of the land was subject to "all mineral reserves which former owners may exercise by paying parties in possession not to exceed $175 per acre plus the value of all buildings on the premises." The deed tendered by appellants in performance of their contract to convey, expressly reserved to the grantors all minerals that might be found in or under the premises, with a right of entry for the purpose of exploring for, mining, and removing the same, and provided that, before any minerals should be actually mined and shipped from the premises, the grantors should repurchase the land conveyed, or any government subdivision thereof, as they might elect, and pay therefor $175 per acre for the land so repurchased, and the value of any buildings and structures on the land so repurchased; that such repurchase price should be in full satisfaction of all damages in any way resulting to the grantee; and that, upon the payment or offer of payment of such repurchase price, then, without any further act, conveyance, or instrument, the complete title to the land so repurchased should immediately vest in the grantors; that the grantee, upon payment or offer of payment of such repurchase price, would execute and deliver to the grantors a good and sufficient deed, containing the usual covenants of warranty of all interest in the land or any government subdivision thereof so repurchased, free and clear of any liens or incumbrances whatever; that the grantors might deposit the amounts due on such repurchase in a bank of good financial standing in the city of Duluth, Minnesota, for delivery to the person entitled

2. VENDOR AND
PURCHASER:
remedies of purchaser: rescission because of
enlarged exceptions.

thereto; and that thereupon the grantors should become the owners of the land and all improvements`thereon, and be vested with full title thereto. The deed was also expressly subject to "timber conveyance of record;" while the contract contained no provision for such a reservation.

It is plain that the rights reserved to the grantors in the deed were very different from, and much broader in scope than, the reservation in the contract. Without elaboration, it will be sufficient to note that the deed reserved a right to enter upon the land and explore for minerals, without any payment whatever, and the right to mine the mineral before any payment was required to be made, since payment was only to be made before the mineral was mined and shipped; while the contract was to sell, subject only to mineral reserves which former owners might exercise by paying not to exceed $175 per acre and the value of buildings. The deed reserved a right to repurchase any government subdivision of the land; while the reservation in the contract applied to all of the land. It is obvious that a right to repurchase any 40 acres is a very different thing from the right to repurchase the whole tract, and that its exercise might result in great injury to the owner. Again, the contract provided that the sale was subject to mineral reserves, to be exercised by paying the stipulated price; but the deed provided that it might be exercised by a mere offer to pay, or by the deposit of the amount in a Duluth bank. Furthermore, the deed required the grantee, in case of the exercise of the mineral right reserved, to reconvey by a deed containing the usual covenants of warranty, and free and clear of any liens or incumbrances. That this might require the grantee to convey and covenant to defend a better title than he received, is plain. No such condition or provision is found in the contract. The deed was clearly not such as appellee was entitled to, under his contract.

IV. The contract required appellants to furnish an abstract showing a good, merchantable title. This was a requirement, not only that the appellants have a good, merchantable title, but that the abstract should so show. *Fagan v. Hook,* 134 Iowa 381; *Billick v. Davenport,* 164 Iowa 105; *Upton v. Smith,* 183 Iowa 588. It is well settled by repeated decisions of this

3. VENDOR AND PURCHASER: performance of contract: abstract showing merchantable title.

court that a merchantable title is one which a reasonably prudent man, familiar with the facts and apprised of the questions of law involved, would accept, in the ordinary course of business. *Fagan v. Hook,* supra; *Billick v. Davenport,* supra; *Buchan v. German Amer. Land Co.,* 180 Iowa 911; *Kurtz v. Gramenz,* 198 Iowa 222.

"While the law does not compel a purchaser to accept a doubtful title, there must be something more than a mere possibility that the title is defective. * * * A threat or even a possibility of a contest will not be sufficient." *Buchan v. German Amer. Land Co.,* 180 Iowa 911.

But a title which exposes a party to good-faith litigation is not marketable. *Buchan v. German Amer. Land Co.,* supra; *Cappel v. Potts,* 192 Iowa 661.

Six abstracts were turned over to appellee on April 7, 1922, at the time he executed the $300 note, each covering a portion of the land in question. Numerous objections were made to all the abstracts on behalf of appellee, at the time they were returned to Pasley by appellee's attorneys. We shall not find it necessary to refer to all of the objections. Each of the abstracts shows a mortgage executed by the appellants to the Fidelity Farm Land Company on the land in controversy and other land, to secure $28,368.85, and a partial release of the mortgage; but none of them show that the land here involved has been released from the lien of the mortgage. There was testimony on the trial to the effect that a release of the land described in the deed had been obtained from the holders of the mortgage. But the appellants' contract was to furnish an abstract showing marketable title. *Lessenich v. Sellers,* 119 Iowa 314, and cases cited supra. The abstracts show conveyances in the chain of title, reserving the ores and minerals and mineral rights, with the right to explore for, mine, and remove the mineral, without obligation to pay therefor. As we have seen, by the contract of purchase the only reservation of mineral right was such as was to be exercised by the payment of $175 per acre and the value of the buildings,—a mere right of repurchase. But the abstracts show that appellants had no title whatever to the minerals, and that they had been expressly and entirely reserved

by former grantees. It is further shown by the abstracts that the grantees through whom appellants derived their title took subject to an unrecorded timber contract or contracts running to the Rhinelander Paper Company. It is claimed, and we think correctly, that the abstracts show the release or expiration of all timber contracts of record shown on the abstract; but no release of this unrecorded contract appears, nor is there anything in the conveyances that are subject to it, to indicate that it is not still in force. The abstracts also show an unsatisfied judgment against a man of the same name as one of the appellants. We are speaking of the abstracts as they were at the time of the trial, and as they appear in the record in this court. There is testimony to the effect that, at the time they were examined by appellee's attorneys, other defects in the title were shown. Enough has been said to indicate that they do not even now show a good, merchantable title, such as the contract required.

That appellee was not required to accept either the abstracts or the deed as performance of his contract of purchase is clear. No other deed or abstract was ever tendered to him. That, under such circumstances, he would have a right to rescind the contract and to recover what he had paid, is well established by the authorities. *Lessenich v. Sellers*, supra; *Fagan v. Hook*, supra; *Strothers v. Leigh*, 151 Iowa 214; *Eller v. Newell*, 159 Iowa 711; *Primm v. Wise & Stern*, 126 Iowa 528. Unless he has in some manner lost or waived the right to rescind, it was properly accorded to him.

V. It is said that the deed and abstracts were accepted by the appellee as performance of the contracts, and that for that reason he may not rescind. The contract required the abstracts and deed to be delivered only on payment of the full purchase price by the appellee. He was not required to accept blindly the deed and abstracts tendered him, as a performance of his contract, but was entitled to a reasonable opportunity and time to examine them.

4. VENDOR AND PURCHASER: remedies of purchaser: rescission: unreasonable retention of title papers.

It is claimed that, by retaining the deed and abstract for 28 days, appellee waived any objection to them, and must be

deemed to have accepted them as they were. It is no doubt true that he must have made his election to rescind within a reasonable time after learning of the defects in the abstracts and the failure of the deed to conform to the contract. He did not receive them for nearly 60 days after making the final payment of $2,000, as agreed upon between himself and Brown. He at once took them to his attorneys for examination. This he had a right to do. He was not required to act on his own judgment alone. While doubtless 28 days were not required for an examination of the deed and abstracts, the documents were of some length, the abstracts somewhat involved and far from simple, and some of the questions presented were of more or less difficulty. If appellants required 60 days for the execution of the deed and the continuation of the abstracts, we are not prepared to say that the length of time taken for their examination by attorneys was so unreasonable as to require a holding that appellee waived all objections to them. Moreover, more than 90 days elapsed after the objections were made, before notice of rescission was given; and even at the time of the trial, some nine months later, no deed or abstracts such as appellee was entitled to had ever been tendered him. Clearly, no prejudice resulted to appellants from the length of time taken for the examination. In this connection it should be noted that, on February 6, 1922, at or about the time the $2,000 was paid, appellee wrote Brown as follows:

"Relative to the abstract for the Minnesota land which I am buying from the Ames Land Company I wish to state that I will examine this abstract when it is drawn up to see that the title is clear back to the original government."

On February 14th, Brown replied, saying:

"Your abstracts will be from the U. S. Gov't. patent. The assignment of the mortgage and the release with respect to your land is already started. As soon as the release is returned so that we know that it is recorded the abstracts will be sent to be brought down to date."

After learning of the objections made to the abstracts, Brown wrote to Pasley, as follows:

"I believe that we should meet all objections in these ab-

stracts at once. * * * Let us get this going before they can take it to court.''

We are clear that, under all the circumstances, there was no acceptance of the deed and abstracts by appellee, nor any such delay in making objections to them as would operate to deprive him of a right to object that they did not comply with the contract, or to rescind the contract if proper deed and abstracts were not furnished.

VI.  Some claim is made that the objections to the deed and abstracts were given to, and the notice of rescission served on, Pasley, the attorney in fact who executed the contract and deed, instead of to the appellants.  It is admitted that Brown, who had been selected by appellants as the ''manager'' of their business, had actual knowledge both of the objections made and the notice of rescission, a considerable time before this action was commenced.  Appellants made no attempt whatever to comply with the contract by tendering such a conveyance as their contract required, nor any successful effort to make the abstracts show marketable title.  But there can be no doubt, from the letter of Brown to Pasley, quoted above, and other circumstances shown in evidence, that appellants acted upon the objections made and the notice of rescission given to Pasley, in their efforts to make the abstracts comply with their contract.

5. VENDOR AND PURCHASER: remedies of purchaser: rescission: sufficiency of notice.

VII.  In 1919, appellee entered into a contract to sell the land to A. F. Hill, one of the appellants.  Nothing was in fact paid by Hill on this contract.  Appellee obtained a judgment against Hill for unpaid interest upon some of the obligations given by the latter for a part of the purchase price.  The judgment was canceled before the trial.  This contract was abandoned before appellee made the final payment for the land.  By written indorsement on the contract, Hill and his wife acknowledged its cancellation and the surrender of all rights thereunder by mutual consent, prior to February 1, 1922; and before the trial they, by quitclaim deed, conveyed all their interest in the land to appellee.  There was nothing in the making of this contract

6. VENDOR AND PURCHASER: remedies of purchaser: resale: effect.

to prevent appellee from subsequently rescinding the contract with appellants for their failure to comply with its provisions.

VIII. The testimony showed that the land was unimproved, and that, to the knowledge of appellee, it had never been farmed or utilized in any way, and that he had received no rents or income from it. It is contended that Hill, under his contract, was entitled to possession of the land, and that there was no showing that he did not receive rent for which appellee should account upon a rescission.

7. VENDOR AND PURCHASER: remedies of purchaser: rescission.

The evidence did not show that Hill was ever in actual possession of the land, or ever received any income from it, or that it had any rental value. It is to be remembered that Hill is one of the appellants. The appellee, in his notice of rescission, offered to surrender any and all rights under the contract, and in his petition pleaded a readiness to restore to appellants everything obtained under the contract, and to do full equity. He showed on the trial that he had received nothing from the land, and had no knowledge of its having been used. This, we think, was all he was required to do. If the land had a rental value, or if Hill had received anything from it, the court was fully empowered, under the pleadings, to require appellee to account therefor. Appellants had but to establish that something had been received by Hill, one of themselves, or that the land had a rental value; but this they did not do. In *Culbertson v. Smith,* 193 Iowa 436, relied upon by appellants, we said that the burden of tender was on the party asking a rescission, and that, if he failed to make it in his notice of rescission, he was no less under the burden of making it at the trial, as a condition to relief. This was said of land admittedly leased to a tenant, and where the only tender was of the right to collect the rent from the tenant, under an oral lease. We further said:

"Under the circumstances shown, equity required that the plaintiff should be charged with the fair and reasonable value of the use of the premises while occupied by his tenant, and this should be tendered by him as a condition to any recovery. Manifestly, he was not entitled to recover more than

the surplus, if any, over and above the reasonable value of the use which he had had.''

The case was remanded, with leave to the plaintiff to make a proper tender, and with leave to the court to hear additional evidence on the question of the value of the use of the premises. Here, as has been said, appellee offered to return everything he had received, and showed that he had received nothing for the use of the premises, and knew of no use to which they had been put. The distinction between the cases is obvious. We regard both the tender made and the evidence offered here sufficient to sustain the decree of the rescission.

The decree is right, and it is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.