In re Estate of A. L. Hager.

O. P. Herrick, Appellant, v. Rey Hager Martin, Administratrix, et al., Appellees (and one other case).

No. 40600.

MARCH 17, 1931.

REHEARING DENIED JUNE 20, 1931.

Charles E. Hunn, Hiram S. Hunn, for O. P. Herrick.

Lehmann, Hurlburt & Hossfeld, for Rey Hager Martin, Mildred Hager Elliott and Ella M. Hager.

Carl S. Missildine, for Polk County.

Brammer, Brody, Charlton & Parker, for Rey Hager Martin and Mildred Hager Elliott, Administratrices of the Estate of A. L. Hager, Frank C. Waterbury and L. A. Andrew, Superintendent of Banking.

WAGNER, J.—A. L. Hager died testate January 30th, 1923. His will was admitted to probate on March 6th of the same year, and Rey Hager Martin and Mildred Hager Elliott, two daughters of the deceased, were appointed and duly qualified as administratrices, with the will annexed. The estate became

heavily involved, because of the large interests of the deceased in one of the banks in Des Moines, which failed and the affairs of which were wound up in receivership proceedings. The widow of said deceased elected to take under the law and her distributive share has been set off to her in real estate other than that involved in this litigation. The proceeds of the personal property of said deceased were inadequate to pay the debts and charges of the estate and it became necessary to resort to a sale of the real estate to obtain funds for said purpose. The general legal description of the real estate herein involved is: The West 125 feet of the East 200 feet of Lot One of the Official Plat of the Northwest Quarter of Section 8, Township 78, Range 24, West of the Fifth P.M. The administratrices obtained an order of court to sell said real estate and apply the proceeds upon the debts and charges of said estate. The property was known locally as "the Hager property, 2116 West Grand Avenue." The services of Botsford, a real estate agent, were obtained to aid in the sale of the premises, and on November 23, 1928, Herrick made the following offer:

"I hereby make an offer of $20,500 for the property known as the Hager property on West Grand Avenue, known locally as 2116 West Grand Avenue, consisting of a tract fronting 125 feet on Grand Avenue and extending back to the railroad right of way on the south approximately 634 feet, together with the improvements thereon, the same to be conveyed to me by general warranty deed and with abstract showing merchantable title free and clear of incumbrances.

"Yours truly,

"O. P. Herrick."

On December 3, 1928, the administratrices and the purchaser entered into a contract, the material portion of which is as follows:

"Witnesseth, that the said parties of the first part, (administratrices) in consideration of the covenants and agreements hereinafter contained, and subject only to the approval of Court, agrees to sell unto the party of the second part, (Herrick) the following described real estate, situated in Polk County, State of Iowa, to wit:

"West 125 feet of East 200 feet of Lot One (1) of Official

Plat of Northwest Quarter (NW ¼) of Section Eight (8), Township Seventy-eight (78), Range Twenty-four (24), West of the Fifth P.M., for the sum of Twenty Thousand Five Hundred ($20,500.00) Dollars, payable as hereinafter mentioned.

"And the party of the second part, in consideration of the premises, hereby agrees to and with the parties of the first part to purchase the above described real estate and to pay therefor to the said parties of the first part, the sum of Twenty Thousand Five Hundred ($20,500.00) Dollars, in cash upon the receipt of a duly and legally executed administratrices' deed to said premises and an abstract of title to said premises showing a merchantable title to the date of said administratrices' deed, free and clear of liens and encumbrances, except only zoning restrictions imposed by Ordinance of the City of Des Moines."

Said contract further provides that the abstract was to be furnished on or before December 31, 1928. On December 19, 1928, the Probate Court entered an order authorizing the sale of the West 125 feet of the East 200 feet of Lot One, of the Official Plat of the Northwest Quarter of Section 8, Township 78, Range 24 West of the 5th P.M., and approving the sale to O. P. Herrick. Said order of court provides:

"It is therefore ordered, adjudged and decreed that said contract of the administratrices herein with O. P. Herrick be and the same is hereby approved, and that the administratrices herein be and they are hereby authorized and directed to execute administratrices' deed to said O. P. Herrick, conveying all the right, title and interest of this estate in and to said real estate, to said O. P. Herrick.

"That the certain deed conveying said premises to said O. P. Herrick, this day presented to the court for its approval be and the same is hereby approved by this court, and the administratrices are authorized, empowered and directed to deliver said deed to said O. P. Herrick, upon receiving purchase price therefor."

The description of the real estate in the administratrices' deed is:

"West 125 feet of East 200 feet of Lot 1, of Official Plat of Northwest Quarter of Section 8, Township 78, Range 24, West

of the 5th P.M., except such part thereof as has been heretofore effectively conveyed for railway or street purposes."

The abstract to the real estate was continued and certain objections to the same were made by the examiner for the purchaser, and on January 4, 1929, the purchaser, by a written instrument signed by him, extended the time for the furnishing of an abstract showing merchantable title until April 30, 1929. Said extension contract refers to the written contract of December 3, 1928, gives the same description of the real estate as given in the contract of purchase and then provides:

"Whereas, certain objections to the title to said property as evidenced by abstract of title heretofore furnished by said vendors to said vendee have been made by counsel for said vendee and the undersigned is willing to extend the time within which the vendors are to furnish abstract showing merchantable title to the date of administratrices' deed heretofore, to wit, on December 18th, 1928, executed by said vendors and assume the payment of taxes for the year 1928;

"Now, Therefore, in consideration of One Dollar ($1.00) in hand paid, receipt whereof is hereby acknowledged, the undersigned, O. P. Herrick, does hereby extend the limit of time for the delivery of abstract of title showing a merchantable title to said premises to the date of said administratrices' deed, until April 30th, 1929.

"The undersigned further expressly agrees that if such abstract showing merchantable title as aforesaid is furnished on or before said date of April 30th, 1929, he shall accept deed subject to the general taxes for the year 1928, payable in 1929, and special assessments and levies which first become a lien subsequent to December 18th, 1928, liability for the payment of which shall not be upon vendors."

On April 29, 1929, the administratrices' deed and an abstract of title were tendered to the appellant. He refused to pay the purchase price because of a shortage in quantity of the tract described in the contract of sale, and because of certain alleged liens against the property and alleged defects in the title to the real estate. On July 22, 1929, the appellant tendered to the appellees the purchase price of $20,500.00 and demanded that they comply with the contract. Thereupon, the appellee

again tendered the deed and abstract of title to the appellant, but he again refused to pay the purchase price. Then the appellees, acting under order of the probate court, offered to rescind the contract, but appellant refused to rescind, saying "that he had bought the tract of ground described in his contract, and that he was going to stand on the contract, and when we could convey what we had agreed we would convey he would pay the money." The real estate in question abuts upon and lies to the south of Grand Avenue, and abuts upon and lies to the north of the right of way of the Chicago, Milwaukee & St. Paul Railroad Company; the east boundary line, ascertained by a survey, is 472.70 feet in length and the west line is 521.55 feet in length; there is a hedge along the east line of the property; Coggeshall owns the property adjoining it on the west; beginning at approximately the northwest corner of the tract in question, is a curb which extends southerly a little east of south; this curb constitutes the east side of the drive way of the neighbor, Coggeshall, the adjoining owner on the west. After a short distance, the curb develops into a retaining wall four or five feet in height. The length of the curb and retaining wall is 271.75 feet; this curb and retaining wall were constructed by Coggeshall more than sixteen years ago; running in approximately a straight line south from the wall is a string of hedge or shrubbery several feet in height, and running south from that is a string of flowers. From the line of flowers there is no line of demarcation between the Hager and Coggeshall properties. From the point where the line of flowers terminates the property slopes abruptly to the south, the lot in question being at said point approximately 55 feet above the level of the railroad track to the south of the property. Appellant's chief complaint is the shortage in area because of what lies to the west of the curb and retaining wall and a straight line running approximately south in accordance therewith. The curb at the north end is nine inches west from the northwest corner of the tract in question, and by drawing a straight line in approximately a southerly direction from the curb and retaining wall, it will intersect the southern boundary sixteen feet from the southwest corner of the tract in question. The number of square feet in the entire tract is 62,140, and the number of square feet west of the curb, retaining wall and straight line leading approxim-

ately south therefrom is 4,370 or approximately one-fourteenth of the entire area. Because of this shortage, the plaintiff contends that he is entitled to an abatement, computed on the square foot basis, of the purchase price.

Before proceeding further, it will be well to consider the issues in the case as made by the pleadings. The appellant alleges in his petition that the abstract fails to show merchantable title to the real estate in question, claiming that the same shows unsatisfied liens against the real estate and other defects of title. He alleges the encroachment upon the real estate in question by the owner of the property adjoining it on the west, and asks for specific performance of the contract and for damages in the sum of $2000.00 because he did not get possession of the premises at the time referred to in the extension agreement, and was unable to wreck the buildings on the ground and use the lumber in the construction of another building, and for $1500.00 for attorney fees, court costs and extra expense. There was no attempt to prove the latter claim for $1500.00 and the same needs no further consideration. The appellees, in their answer, deny that the abstract tendered was not merchantable, allege that the sale of the premises was a sale in gross, that the appellant had refused to rescind, and they made a tender of the deed and abstract in court and prayed that any abatement on the purchase price be denied. They also filed a cross petition in which they allege that the sale of the premises was a sale in gross; that the appellant had refused to rescind; that the sale was a judicial sale; that the premises were free from liens and that the abstract tendered shows merchantable title, and prayed for specific performance of the contract. The appellant in his reply prayed that, in the event the court should find that the administratrices are unable to deliver a tract of land 125 feet in width, they be authorized and directed to deduct from the purchase price of the property, in addition to the damages prayed for in his petition, the sum of $4000.00 as damages for the loss of the property, the possession of which they are unable to deliver to the appellant.

The appellant further alleged in his petition, that the parties defendant, other than the administratrices, have claims against, or liens upon the property in controversy, such as to be encumbrances upon the title to the property. All of said

parties, except the Des Moines National Bank, filed disclaimers of any interest in or claim against the property, and the bank made default and was found by the decree to have no interest in the subject matter of the suit. Therefore, the matters for our determination are only the rights as between the appellant and the administratrices of the estate.

It becomes important to first determine whether the sale was a sale in gross or by the acre, or by the square foot, or by the front foot, or by any other unit of measurement. A specific tract of real estate which is offered for sale and sold at a stated price, and not according to some superficial unit of measurement, is a sale in gross and the purchaser is not entitled to an abatement on the purchase price, even though the tract is not as large as the parties thought it was, unless a discrepancy in area is so great as to shock the conscience or of such a character that the court can say that had the parties known the facts as to the area the contract of sale would not have been entered into by the purchaser. See Rathke v. Tyler, 136 Iowa 284; Butterfield v. Cooper, (N. Y.) 6 Cowen, 481; Hostetter v. Merrick, (N. J.) 112 Atl. 487; Cock v. Norwood, (Tex.) 243 S. W. 571; Welch Pub. Co. v. Johnson Realty Co., (W. Va.) 89 S. E. 707; Hyde v. Phillips, (Wash.) 112 Pac. 257; Cox v. Collins, (Ala.) 88 So. 440; Cohen v. Numsen, (Md.) 65 Atl. 432; Taylor v. Williams, (Ky.) 250 S. W. 820; Lafayette Bldg. Corporation v. Tait, (N. J.) 134 Atl. 875. In Rathke v. Tyler, 136 Iowa 284, the court declared that sales by the acre (which is equally applicable to a sale by any other unit of measurement) may be subdivided into those wherein this is expressed in the conveyance and those wherein this was not so expressed, but such was the understanding of the parties. Relative to sales in gross, we there made the following pronouncement:

"Sales in gross or by boundary are divisible into three subclasses: (1) Those strictly by the tract, without reference to negotiation or estimated quantity of acres; (2) those in which the quantity may be referred to in the contract, but this is only by way of description, and under such circumstances or in such manner as to show that the parties intended to risk all contingency as to quantity, however much the discrepancy might be; and (3) those in which it is reasonably probable, from the price stated, in connection with the value and the extent of the

discrepancy, or from extraneous circumstances, such as locality, value, price, time, and the conduct and conversation of the parties, that they did not intend to risk more than the usual rate of excess or deficiency, or than such as might reasonably be calculated on within the range of ordinary contingency. It is manifest that contracts within the first two subdivisions, in the absence of any proof of fraud, will not be interfered with by a court of equity, for the evident reason that the parties have intended to hazard the quantity regardless of the extent of any possible discrepancy. But under the third subdivision any unreasonable surplus or deficiency will entitle the injured party to equitable relief, unless in some way he has waived or forfeited this right to demand the same. The discrepancy in this case is not sufficient to bring it within this subdivision. The shortage was six and forty-nine one hundredths acres in one hundred, and we have discovered no case declaring this so unreasonable as to justify relief. In Yearley v. Morris, 9 (Ky.) Law 703 (6 S. W. 433), a description of 282 acres fell short twenty acres, and the deficit was held insufficient, in the absence of proof that the sale was by the acre.''

It will be observed that in the case last above cited, the shortage was about 1/15 of the entire tract, and this court held that such shortage would not entitle the purchaser to relief if the sale was a sale in gross.

In Hostetter v. Merrick, (N. J.) 112 Atl. 487, the vendee brought suit for specific performance of a written contract for the sale of real estate, and also asked that he be allowed an abatement on the purchase price. The description of the real estate contained in the contract is as follows:

'' 'All the lot, tract, or parcel of land and premises hereinafter particularly described situate, lying and being in the city of Atlantic City in the county of Atlantic and state of New Jersey, being premises situate at and known as No. 1510 Pacific avenue, the said lot being 34-½ feet front on Pacific avenue and of that width, 100 feet in depth.' ''

The lot was not 34-½ feet wide for its full depth or length. At the rear end it was only 30.42 feet wide. Prior to the time of the execution of the contract, the purchaser had inspected the property and the price was agreed upon. The court in deny-

ing the purchaser relief by way of abatement on the purchase price, made the following pronouncement:

"The property owned by vendor is No. 1510 Pacific avenue, but is only 34 feet in frontage on Pacific avenue. It is 100 feet 6 inches in depth on its westerly side boundary line and 100 feet in depth on its easterly side boundary. These two side boundary lines of the lot also converge so that the rear or southerly boundary line of the lot is but 30.42 feet. It is by reason of this deficiency in the superficial area of the lot that the vendee seeks as a part of a decree of specific performance compensation by way of abatement from the purchase price. * * * It is a well recognized duty of a court of equity to decree specific performance by a vendor of a contract of this nature with an abatement from the purchase price by reason of deficiency in the quantity of land contracted for, and essentially the same relief is frequently administered in the foreclosure of a purchase-money mortgage when deficiency in quantity of the land sold has been ascertained. But I think no case of either class is to be found in which relief has been given for deficiency in quantity of land in the absence of fraud unless it has satisfactorily appeared that the element of quantity of land was of the essence of the contract. Where a sale is by the acre or other unit of superficial contents, and a substantial mistake has been made touching the area, a vendee may be equitably awarded appropriate compensation for deficiency in quantity, or where the mistake in quantity is so gross that it is clear the purchaser would not have contracted had he known the mistake, like relief may be awarded, but where from all the circumstances of the case it is clear that the sale was in gross, and that the purchaser was not in fact influenced in the price he agreed to pay by any mistake touching area, there is obviously no equitable ground for abatement from the purchase price. On the contrary, in such circumstances an abatement from the purchase price would be clearly inequitable."

In Cock v. Norwood, (Tex.) 243 S. W. 571, the plaintiff owned a lot which was bounded on the west by a brick building, on the south by a fence, on the east end part of the way by a brick building and on the north by a plank fence. Prior to the sale, the purchaser made an examination of the lot and

knew and understood its location and surroundings. Plaintiff offered the lot for sale for $2000.00 and the purchaser agreed to the same. The defendant claimed an abatement by reason of a shortage in quantity, in that the lot was 55 feet across the north end, whereas, the deed called for 60 feet. Further on the southeast corner there was an offset 10 feet east and west by 26 feet north and south, leaving a total of 15 feet shortage across the south end, whereas the deed called for 60 feet. The east and west lines were 77 feet long, whereas, the deed called for the lines to be 90 feet long. The court denied the defendant an abatement on the purchase price, saying:

"There is no fraud alleged or shown on the part of the appellee which induced the appellant to make the purchase of the lot, and it is settled law that the general covenant of warranty in the deed applies to the title, and not to the quantity of land in the lot. Daughtrey v. Knolle, 44 Tex. 450; Eaton v. Tod (Tex. Civ. App.) 68 S. W. 546. The finding of the jury is, and there is evidence, to support it, that appellant purchased the land as it was defined and inclosed on the ground by the fence, buildings, and the street. Appellant bought the lot in gross for the sum of $2,000, and he did not buy, nor was he induced to buy, the lot by the front foot or by 'paying her so much per square foot.' "

In Welch Pub. Co. v. Johnson Realty Co., (W. Va.) 89 S. E. 707, the court said:

"A lot in a town plat is an entity like a farm or tract of land and is usually dealt with as such. A sale of a farm or tract, by name or general description, is a sale in gross, and the acreage is not the basis of the contract, even though it is mentioned by way of description. A sale of a lot the identity, location, and dimensions of which are found in a town plat must be regarded in much the same way. It is not a sale by the front foot or by fractional part, unless the terms of the contract make it so."

In Hyde v. Phillips, (Wash.) 112 Pac. 257, the court declared:

"Whether it was a sale in gross or by the acre, depends upon the intention of the parties."

In Cox v. Collins, (Ala.) 88 So. 440, the court said:

" 'The general rule is that, when specific or designated tracts or parcels of land are sold as a whole for a gross sum, and there is no express or implied warranty as to quantity, the transaction is termed a sale in gross. In such a sale quantity is not of the essence of the contract, and in the absence of fraud or gross mistake the purchaser is entitled to no diminution or abatement of the purchase price, if the quantity of land is subsequently ascertained to be less than was supposed or estimated at the time of the sale. * * *' After all, the question falls upon the proper intention of the parties as disclosed by the language of the contract in the light of the surrounding facts and circumstances."

The undisputed evidence is that the Hager property was listed for sale with Botsford for $22,000.00; it was not listed for sale on either a front foot or square foot basis. Botsford offered the Hager property to appellant for $22,000.00. At no time during the negotiations were the premises offered to appellant at a price per square foot or front foot, and at no time during the negotiations did the appellant say anything about a price per front foot or square foot or any other unit of measurement. The appellant told Botsford he would go out and look at the property and asked where the boundaries were. Botsford informed him that the lot had on it a frame house; that the lot extended back to the railroad right of way at the rear and the boundaries were fixed by a wall on the west and a hedge on the east. Shortly thereafter, the appellant went upon the property and fully inspected it, and testifies that he saw the house, the hedge on the east side, and the retaining wall, and the hedge extension on the west side of the property; that he saw the railroad right of way on the south and Grand avenue on the north. In fact, he saw all of the boundaries of the property. He could not have believed that he was to get any property west of the curb and retaining wall. He then reported to Botsford that he would give $20,000.00 for the property. In a later conversation he told Botsford, if he could obtain the property for him for $20,000.00, he would give him a commission of $500.00. Botsford told appellant that he was representing the other parties and could not accept a commission from him, but that if he

was willing to pay a commission of $500.00, to increase his offer by that amount and he would see if he could not make the deal on that basis. Botsford prepared the written offer hereinbefore set out, and the only portion thereof suggested by appellant was the amount of $20,500. Botsford testifies that the clause "consisting of a tract fronting 125 feet on Grand Avenue" etc. was put in the offer by him on his own initiative for the purpose of identification. The offer was accepted and in drawing the contract, Mr. Charlton obtained the general legal description of the property from the probate files and inserted same in the contract.

There is no fraud on the part of the appellees or the real estate agent. They acted in the best of faith. It is clearly apparent from the record, in the light of the authorities hereinbefore cited, that the sale of the property was a sale in gross. We are also satisfied from the record, that the value of the lot in question for the purposes for which it is adapted is not materially lessened by reason of the shortage caused by the encroachment, and that appellant is not entitled to an abatement on the purchase price by reason thereof. It is conceded that appellant knew of the shortage, by reason of the alleged encroachment, as early as April 10, 1929.

Coggeshall's rights to the real estate in question, west of the curb and retaining wall, have not been adjudicated, and he is not a party to this action, but it seems to be assumed by the parties to this action, that he has rights therein which will prevail over the owner of the Hager property, and our discussion is based upon said assumption without making any pronouncement with reference thereto.

Relative to appellant's claim for damages for $2000.00 because of his claim that he was not given possession of the real estate on or before April 30, 1929, and was therefore prevented from using the salvage from the buildings thereon in the construction of other buildings which he proposed to erect, it is sufficient to say that damages recoverable for breach of contract are such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time when the contract was made, as the

864

probable result of a breach of it. See Snyder v. Sargeant, 197 Iowa 475, and cases therein cited. The record fails to disclose that the appellees were apprised of any such purpose on the part of the appellant when the contract was entered into, or that he contemplated such course of action at that time. Clearly, any such damage is due to special circumstances now relied upon by the appellant and are not shown by the record to have been in the contemplation of the parties at the time when the contract of sale was executed. Moreover, as we shall hereafter see, the cause of appellant's failure to obtain possession of the property was his own default.

█ The appellant concedes in argument that, ''if the court should find that the abstract of title as tendered on April 30, 1929, to the appellant, showed merchantable title and that the appellant was (is) not entitled to any abatement of the purchase price for damages, then obviously, the appellees are entitled to an affirmance of the decree of specific performance which they received at the trial court.'' Did said abstract as tendered show merchantable title? The repeated pronouncements of this court declare that a merchantable title is one which a reasonably prudent man, familiar with the facts as appear of record, and apprised of the questions of law involved, would accept in the ordinary course of business. See Billick v. Davenport, 164 Iowa 105; Fagan v. Hook, 134 Iowa 381; Culley v. Dixon, 199 Iowa 136; Kurtz v.. Gramenz, 198 Iowa 222; Cappel v. Potts, 192 Iowa 661; Buchan v. German American Land Co., 180 Iowa 911. In the Buchan case we said:

''While the law does not compel a purchaser to accept a doubtful title, there must be something more than a mere possibility that the title is defective. Miller v. Cramer, (S. C.) 26 S. E. 657. A threat or even a possibility of a contest will not be sufficient.''

█ It will be noted that there is a variance between the description in the contract and the deed. The deed contains the following exception: ''except such part thereof as has been heretofore effectively conveyed for railway right of way or street purposes.'' The appellant makes some contention relative to said variance, but there is no merit in his contention, as it is shown by the undisputed testimony that said exception

was placed in the deed with his knowledge, consent and approval, and he is now precluded from questioning the description contained in the deed.

The appellant virtually concedes that, by reason of the disclaimers filed by the parties defendant, other than the administratrices, and the decree rendered herein in which it is held that the Des Moines National Bank has no interest in the subject matter, the title to the real estate in controversy is now free from doubt, but his contention is that the abstract tendered did not show merchantable title on April 30, 1929. This becomes material upon the question as to who is liable for the payment of the taxes for the year 1928 and subsequent years, as the extension agreement of January 4, 1929, provides, that if abstract showing merchantable title is furnished on or before April 30, 1929, the appellant shall pay the taxes for the year 1928, etc.

The abstract tendered contained the statement that the second installment of the personal taxes on the stock of A. L. Hager in the Commercial Savings Bank for the year 1924, in the amount of $1671.03, is due and delinquent. Hager died January 30, 1923, and this fact is also shown by the abstract of title. It is the contention of the appellant that the amount due for said taxes constituted an unsatisfied lien against the real estate. There is no merit in this contention. The abstract of title also shows that the real property in question was sold at regular tax sale on December 5, 1928, for the tax of 1927, and that redemption from said sale was made on April 26, 1929. The lien of personal taxes on real estate is purely statutory and under the provisions of Sections 7192 and 7203, Code, 1927, they are made a lien on the real estate owned by the person owing the tax. Upon the death of the owner of real property, the title passes at once to the heirs or devisees. It is true, that it can be subjected to a sale by the administrator or executor to obtain funds to pay the debts and charges of the estate, provided the personal property is inadequate for said purpose. Assuming that the delinquent personal tax on the bank stock for the year 1924 became a lien upon the real estate in controversy, the lien, if any, for said taxes became extinguished by the tax sale of December 5, 1928. See Hough v. Easley, 47 Iowa 330. Section 7244, Code, 1927, makes it the duty of the County Treasurer to offer at his office, at the annual tax sale, ''all lands, town lots,

or other real property on which taxes of any description for the preceding year or years are delinquent, which sale shall be made for the total amount of taxes, interest, and costs due and unpaid thereon." In Hough v. Easley, 47 Iowa 330, after quoting the statute (now Section 7244, Code, 1927), the court said:

"The sale discharges, is in payment of, all taxes—not of taxes for which the land is sold, but of *all* taxes due and unpaid. We know of no rule of interpretation which will permit us to restrict the language and apply it exclusively to the taxes of the years for which the land is sold, or to such taxes as may be set out in the advertisement or other tax sale proceedings. We have nothing to do with the policy of the statute, but its reason and object, when interpreted according to its plain meaning, are not difficult to discover."

It is quite apparent that the personal tax for the year 1924 was not a lien against the real estate when the abstract of title was tendered.

■■■ The appellant also contends that two so-called judgments shown on the abstract affect the merchantability of the title to the real estate. This contention is devoid of merit. The actions in which the same were rendered were begun and concluded after the death of A. L. Hager. The decrees merely provide that the amount for which the estate is found to be liable are established as claims against the estate, and this is shown by the abstract of title. Even if they could be called judgments, they would not constitute a lien against the real estate, as it is a well settled rule in this state that an execution cannot be levied upon real estate of a deceased debtor unless the judgment became a lien thereon during his lifetime. Harrington v. Clark, 199 Iowa 340; Lepage v. McNamara, 5 Iowa 124.

The distributive share of the widow of A. L. Hager, deceased, on her application, was set off in property other than that in controversy herein. We have examined the abstract relative thereto and find no irregularity or illegality in the proceedings which accomplish that purpose. There is no merit in appellant's contention at this point. Neither is there any merit in his contention as to the regularity or legality of the proceed-

ings which were brought by the administratrices for the sale of the real estate in question.

It is true, that the abstract tendered shows that the taxes upon the real estate for the year 1928 were not paid, but if a merchantable abstract of title was furnished on or before April 30, 1929, the appellant agreed in the extension agreement hereinbefore referred to, to pay the same, and we find that the abstract of title tendered shows merchantable title to the real estate.

■ The appellant complains because the court allowed the appellees interest on the $20,500.00 from the 30th day of April, 1929. The abstract tendered by the appellees showed merchantable title on that date, and according to the agreement between the parties, the purchase price was then due. It was therefore proper for the court to allow interest thereon at the rate of 6% as provided by the decree.

We have carefully considered all propositions relied upon by the appellant for a reversal and find no merit therein. Other propositions relied upon by the appellees for affirmance are argued, but because of our conclusions upon the matters hereinbefore discussed, they need no consideration. The judgment of the trial court is hereby affirmed.—Affirmed.

FAVILLE, C. J., and GRIMM, DE GRAFF, and EVANS, JJ., concur.

ALBERT, J., not participating.